JOHN ALLISON v. LYDIA J. McCLUN, *as Guardian, etc.*

1. EVIDENCE *Sustains Judgment.* The evidence in this case considered, and *held* sufficient to sustain the verdict and judgment rendered in the court below.

2. ———— *No Error.* Other matters considered, and *held,* that no material error was committed.

*Error from Republic District Court.*

AT the October term, 1886, this case was tried before the court and a jury, and the jury made the following findings of fact, to wit:

"1. Did Isaac McClun have any notes turned over to him, or left with him, on or after the first day of April, 1881, in which the above-named plaintiff owned an interest? *Ans.:* Yes.

"2. If you answer the above in the affirmative, what interest did the above-named plaintiff have in said notes? A. One-half.

"3. At what date were the notes turned over, or left with the above-named defendant, and for what purpose? A. April 1, 1881, for collection.

"4. How many notes were turned over to said defendant in which plaintiff owned an interest? A. Eighty-eight."

"7. Have any of said notes been collected by the said Isaac McClun or any of his duly-authorized agents? A. Yes.

"8. If the above is answered in the affirmative, then state on which of said notes the collections were made, the amount collected on each note, and the date of said collection. A. I don't know.

"9. If there have been any collections made on said notes, what part, if any, of the amount collected has been paid to the above-named plaintiff, and at what date was the last payment made? A. Last payment made about July 30, 1881, and January 17, 1882; one-half less one per cent. for collection.

"10. Are there any of the notes that are not yet collected? A. Yes.

"11. If the above is answered in the affirmative, then state the per cent. of face value of said notes not collected. A. Per cent. value, nothing.

"12. Was there a demand made of the defendant or of any of his agents, for the possession of these notes, or any of them, before the commencement of this action? A. No.

"13. If the above is answered in the affirmative, state on whom the demand was made, and by whom it was made, and the date and place that it was made. A. ——.

"14. Has the plaintiff money in his possession or under his control belonging to this defendant, received by him from Isaac McClun, or from sale of corn, or rent of house? A. Yes.

"15. If the above is answered in the affirmative, state the amount. A. $160.

"16. Did the plaintiff sell any corn which belonged to the defendant, in the fall of 1884? A. Yes.

"17. If answered in the affirmative, state what the aggregate value of said corn amounted to in dollars and cents, and what plaintiff did with the proceeds. A. $160. Not remitted.

"18. Did the plaintiff have the use of defendant's house

in Gardner, for which he was not fully paid rent for at the commencement of this action ? A. Not so proven.

"19. If the above question is answered in the affirmative, then state the amount. A. ———."

The jury also rendered the following verdict, to wit:

"We, the jury impaneled and sworn in the above-entitled case, do upon our oaths find for the defendant, and assess the amount of her recovery at $160."

New trial denied, and judgment rendered for the defendant. The plaintiff brings the case here.

*A. E. Taylor,* and *Lowe & Smith,* for plaintiff in error.

*Kelley & Thorp,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action prosecuted in the district court of Republic county by John Allison as plaintiff, against Lydia J. McClun, guardian of the estate of Isaac McClun, insane, as defendant, for the recovery of one-half of $4,449.93, alleged to be due to the plaintiff as principal and interest on certain promissory notes executed by various persons other than those above named, and belonging to the plaintiff and to Isaac McClun jointly, and placed in the hands of Isaac McClun for collection; and for costs of suit. The defendant answered, denying generally the plaintiff's claim, and setting up new matter constituting a claim on her part for moneys had and received by the plaintiff of Isaac McClun, a claim for the proceeds of 2,600 bushels of corn belonging to Isaac McClun and sold by the plaintiff, and a claim for rents due from the plaintiff for the use of a dwelling house belonging to Isaac McClun; and claiming a judgment in her favor for $2,166, and interest and costs. The plaintiff replied, setting forth a general denial and some new matter, and asking for judgment as prayed for in his petition. The case was tried before the court and a jury, and the jury made certain special findings of fact, and also returned a general verdict in favor of the defendant and against the plaintiff, assessing

the amount of the defendant's recovery at $160, and the court rendered judgment accordingly; and to reverse this judgment the plaintiff, as plaintiff in error, brings the case to this court.

Among the admitted facts are the following: On April 1, 1879, John Allison and Isaac McClun, who then resided in Gardner, in the state of Illinois, formed a copartnership for the purpose of conducting a banking business at Scandia, Republic county, Kansas, each contributing $10,000 to the capital thereof. McClun removed to Scandia, and gave his personal attention to the business. Allison continued to reside in Illinois, but was represented at Scandia by Emery D. Scott. They continued in the business for two years, when, on April 1, 1881, they dissolved their copartnership by mutual consent, the terms of the dissolution being arranged by mail, and carried into effect on the part of Allison through the agency of Scott. By their settlement the entire business, including the building, furniture, etc., passed into the hands of McClun, except that the late partners continued to jointly own all the notes and moneys on hand, and the accounts with correspondent banks. These notes were delivered to McClun for the purpose that he might collect the same and remit one-half of the proceeds thereof to Allison, less one per cent., which one per cent. was the agreed collection fee or commission which McClun was to retain for his services for collecting and transmitting Allison's portion of the money. Before these notes were delivered to McClun, Scott made copies thereof on blanks contained in a blank note-book. Scott remained with McClun until about May 14, 1881, when he returned to Illinois, taking with him Allison's share of the moneys belonging to the late firm, and also Allison's share of all the moneys which had been collected since the dissolution, and up to that time, and delivered the same to Allison. Subsequently, and at different times, McClun remitted to Allison other moneys collected by him, usually sending the same by draft. Allison also collected and received moneys due to McClun in Illinois, and also sold corn belonging to McClun in Illinois, and received the purchase-price therefor. On October 10, 1884, McClun

was adjudged to be insane, and Lydia J. McClun was appointed and she qualified as his guardian, both of his person and of his estate. In January, 1885, this action was commenced.

We cannot say that substantial justice has not been done in this case. Indeed, if the verdict of the jury and the judgment of the court below had been for a larger amount against

1. Evidence sustains judgment. the plaintiff than they actually were, still we could not say that any injustice had been done

him. While his own testimony is positive enough in his favor, and tends to show that the verdict and judgment rendered in the court below are erroneous, yet many of the circumstances of the case and his own admissions prior to the commencement of the action, are against him. He claims that the last payment made by McClun to him on account of the aforesaid notes held by McClun, was made on August 30, 1881, and the jury found that the last of such payments was made on January 17, 1882; and still it does not appear that the plaintiff complained of any wrong being done on the part of McClun, or even made any inquiry why further payments were not made, until sometime in October, 1884, after McClun had been adjudged to be hopelessly insane; and the plaintiff did not commence this action until in January, 1885. How is this delay to be accounted for, if McClun was acting unfairly or dishonestly? It also appears that McClun, by drafts sent by him to the plaintiff and collected by the plaintiff, paid to the plaintiff an amount of money greater than all the interest which the plaintiff ever had in the foregoing notes; and what all these drafts were for, unless they were for the purpose of making payments on account of the notes, has not been satisfactorily explained by the plaintiff. What the $160 given by the verdict of the jury to the defendant was for is not definitely shown, but if this amount was given for corn sold by the plaintiff for McClun, as the plaintiff claims, still we could not say that it was error. It is admitted that the plaintiff sold corn for McClun at different times, and while the plaintiff testified on the witness stand that he had remitted to

34—40 KAS.

McClun the full amount of all the proceeds of the sales, yet his admissions prior to that time would be sufficient to author-ize the jury to find otherwise.   His last remittance, according to his own testimony, was as late as in the fall of 1883, and perhaps later.   Now if McClun was not doing his duty with respect to the notes, why did the plaintiff make this remittance without complaint?   The defendant's answer alleges that the corn for which she sues was sold in 1883.   Her evidence, however, tends to show that it was sold in 1884.   This vari-ance is not material.   Allegations of time with respect to the happening of some event are usually immaterial.

The plaintiff, however, has assigned various specific things which he claims are errors, and for which he claims the judg-ment of the court below should be reversed, all of which we have carefully examined, and the principal of which we shall now proceed to discuss.   The testimony of Wilson and Mory, complained of in the first and second assignments of error, is immaterial for the reason that the jury wholly disregarded the same in rendering their verdict and in making their special findings.

2. Alleged errors examined.

It is claimed that the court below erred in permitting the defendant to prove that McClun had the reputation of being prompt and honest in his dealings.   The evidence complained of is as follows: The defendant propounded to her own wit-ness the following question, to wit: "Do you know what his [McClun's] standing was in the community for uprightness? Do you know what his character was for uprightness in business in the community?"   To this question the plaintiff objected, but the court overruled the objection, and the witness answered as follows: "We considered it good."   Under the pleadings in this case, this evidence was probably admissible.   The plaintiff in his petition in various ways charged McClun with fraud and moral turpitude.   He charged that McClun collected the notes, converted the proceeds thereof to his own use, and with-held and concealed all evidence thereof.   Among the allega-tions of the petition are the following: "That to further perpetrate said fraud, the said McClun fraudulently and wrong-

fully neglected and omitted to enter the collections made by himself and agents on said notes on his bank books, although it was his duty so to do." . . . "That said Isaac McClun, wickedly intending to cheat and defraud this plaintiff out of his half-interest in and to said notes, collected the same and converted all of said proceeds to his own use." Besides, the evidence tended to prove only what the law would presume in the absence of evidence. We do not think that the judgment of the court below should be reversed for this supposed error.

We do not think that any error was committed in permitting the defendant to prove that McClun had sent to the plaintiff other drafts than those which the plaintiff admitted were drafts for money collected by McClun upon the notes in McClun's hands. It is admitted that the plaintiff received all the money which these other drafts called for; and a cause of action was set forth in the defendant's answer for money had and received. And further, the plaintiff pretended to set forth in his petition all the business transactions had between himself and McClun having any connection with the foregoing notes. He set forth the aforesaid copartnership, its dissolution, the receiving of the notes by McClun, giving full copies of the notes; and he then pretended to set forth specifically and in detail all the payments that were ever made by McClun on account of the notes; and after setting forth all these things, he then alleged specifically "that neither said McClun, his agents, guardian, or her agents, has paid or caused to be paid to this plaintiff, or any persons authorized to receive payment on his account, a single dollar or cent on any of said notes, accounts, or any or either of them, since August 30, 1881, or prior thereto, other than is hereinbefore expressly admitted, or indorsed on said exhibits to this petition." And he further alleged as follows: "That the above and foregoing is a full, complete and correct statement of all unsettled business of the aforesaid copartnership of McClun & Allison, dissolved as aforesaid. That after allowing said estate all legal credits, counterclaims and set-offs to which it is entitled,

there is due this plaintiff from said estate in full and complete settlement of said ex-copartnership business, the sum of $4,449.93." The defendant denied all the foregoing matters and things. In other words, the plaintiff alleged affirmatively that no payments except such as he specifically set forth had ever been made to him on account of the foregoing notes; while the defendant denied the same. This presented an issue as to whether McClun had paid all the foregoing notes or not, or whether he had paid all that it was his duty to pay, or that he was bound in law to pay. We cannot say that the court below erred in admitting the foregoing evidence. Nor can we say that the finding of the jury, that the plaintiff was wholly paid everything that was due him, is not true. The fact that some portion of the notes has not yet been wholly paid by the payees thereof, does not prove that the plaintiff has not received from McClun his full share of all that has ever been collected by McClun on the notes. Nor does it even prove that the plaintiff has not received all that he would be entitled to receive even if all the notes were wholly paid by the payees thereof. Whether the plaintiff made any demand before commencing this action or not, is, under the other facts of this case, wholly immaterial; and whether the balance due on the notes as against the payees thereof, and not yet collected, is of any value or not, is also immaterial. The jury found that no demand was ever made, and that the balance still due on the notes is of no value.

We think we have already sufficiently considered all the other assignments of error.

The judgment of the court below will be affirmed.

All the Justices concurring.