## NEW YORK, CHICAGO & ST. LOUIS RAILROAD COMPANY *v.* FLYNN.

[No. 6,003. Filed June 27, 1907. Rehearing denied December 19, 1907. Transfer denied April 9, 1908.]

1 TRIAL. — *Instructions.* — *Specificness.* — *Objections.* — Where an instruction is correct, so far as it goes, it is the duty of the party objecting thereto to present one which is complete and specific. p. 503.

2. SAME.—*Instructions.—Duplication.*—Requested instructions are correctly refused, where the law and facts therein contained have been embodied in instructions given. p. 503.

3. SAME.—*Instructions.—Proof of One of Several Acts of Negligence.—Complaint.*—Where a complaint alleges that defendant railroad company caused a collision, injuring plaintiff, by reason of its negligence in the construction, equipment, operation, management and control of its railroad and the trains thereon, an instruction that the plaintiff is entitled to recover upon proof of one of such acts of negligence, is correct, such acts being several and not joint. p. 503.

4. EVIDENCE.—*Affidavit for Continuance.*—*Absent Witnesses.*—*Impeachment of.*—Where an affidavit for a continuance was filed, in a personal injury case, setting out that a certain doctor, if present, would testify that the plaintiff was not injured, and the plaintiff admitted, in order to go to trial, that he would so testify, plaintiff cannot, on the trial, impeach such doctor by showing that he made statements agreeing with another physician that the plaintiff was injured as alleged. Watson, J., dissenting. pp. 504, 507.

5. WITNESSES.—*Impeachment.*—*Methods.*—Witnesses may be impeached by showing their reputations for veracity and morality, or by showing that they made statements contradicting their testimony. p. 506.

6. SAME.—*Impeachment.*—*Laying Foundation for.*—Before a witness, testifying orally or by deposition, can be impeached because of his making contradictory statements, he must be asked concerning the making thereof, the time and place being specified, and be given an opportunity to deny or explain same. p. 506.

7. APPEAL.—*Bill of Exceptions.*—*Introduction of Evidence.*—Where the bill of exceptions shows that questions were asked, objections made and overruled, exceptions taken, answers given, motions to strike out made and overruled, and an exception taken, there is an affirmative showing that the evidence was introduced, although the court remarked: "Well, it has not been read to the jury yet," such remark evidently referring to the introduction of other evidence. p. 509.

From Laporte Superior Court; *Harry B. Tuthill,* Judge.

Action by Mattie Flynn against the New York, Chicago & St. Louis Railroad Company. From a judgment on a verdict for plaintiff for $4,500, defendant appeals. *Reversed.*

*Walter Olds, J. H. Clarke* and *Charles M. Niezer,* for appellant.

*Marvin E. Barnhart, Virgil S. Reiter* and *L. L. Bomberger,* for appellee.

HADLEY, J.—This is an action by the appellee against the appellant for damages resulting from an injury alleged to have been received while upon one of appellant's passenger-trains, by reason of a collision between said passenger-train and another of appellant's trains, and is a companion case to *New York, etc., R. Co.* v. *Callahan* (1907), 40 Ind. App.

223, growing out of the same accident. The complaint, in its substantial averments, is identical with the case just cited. The same proceedings and rulings were had as in that case, and, on the authority and reason of said case, the complaint is sufficient.

Objection is made to the giving of the third instruction. This instruction is identical with the third instruction given in the case last cited and, on the authority of that case, it is held not to be reversible error. Objection is also made to the first, second, fourth, fifth and sixth instructions given by the court. It is objected that the first instruction

1. is not specific enough in pointing out the negligence upon which the complaint rests. This instruction is substantially in the language of instructions asked by appellant. It is correct, as far as it goes; and if appellant desired more specific instruction it could have asked for the same, which it did not do.

The other instructions are all substantially in the language of instructions asked by appellant—some of them in the exact language. They fully cover instructions two to

2. thirteen, inclusive, requested by appellant. Their language is more terse, explicit and easily understood than if given in the language as requested. For this reason it was not error to refuse to give said requested instructions. To have given the instructions as requested could only tend to confuse the minds of the jury and serve no useful purpose; and the court is to be commended for reducing the instructions in verbiage, and placing them before the jury in a coherent and consistent order.

The fourteenth instruction was to the effect that the averments of the complaint, as to the acts of negligence, were joint, and that, to entitle the appellee to recover, she

3. must prove all of said acts of negligence, and that she could not recover if she proved only one. The averments of the complaint were that the collision occurred by reason of the negligence and carelessness of the appellants

in the construction, equipment, operation, management and control of said railroad and the trains thereon. These are not joint averments, and there is no natural connection between them or dependence of one upon the other. It is not shown by the record that the complaint proceeded on the theory that these averments were interdependent or that the cause was tried on any such theory. This being true, proof of any one of said acts of negligence was sufficient to entitle appellee to recover. *New York, etc., R. Co.* v. *Callahan, supra,* and cases cited.

Before the trial of the cause Mr. Olds, attorney for appellant, made an affidavit for continuance, upon the ground of the absence of Dr. Clark, a witness in said cause. The 4. affidavit stated that if Clark were present he would testify as follows: That said Clark made an examination of said plaintiff immediately or within a few days of the alleged accident, and that he likewise, in company with other physicians, made an examination of her on or about February 20, 1905; that he made a careful examination of said plaintiff at both of the times that he examined her as aforesaid, and that he did not find any injury to the plaintiff or any disease with which she was suffering; and that, from his said examination, he would testify that she was well and suffering from no physical injury at the time of his examination.

The affidavit further shows that, if the cause should be continued, the attendance of Dr. Clark could be had or his deposition taken. Appellee, to avoid a continuance, admitted that said Clark would testify to the facts shown by said affidavit as being true. Afterwards, on the trial, appellant, as part of the testimony of the defense, introduced this affidavit in evidence.

On direct examination Dr. Shanklin, witness for appellee, testified that he was present when Dr. Clark made his examinations. He was questioned, and answered as follows: "Q. What, if anything, did Dr. Clark say at the time you made

the examination with him on the evening of October 18, 1904, as to the condition of her back?'' To which witness replied, over objection of appellant: ''On the way back, driving back with the doctor, he said my diagnosis was correct. I told him what my diagnosis was, and he said: 'That is correct as far as I can see.''' Witness further testified that he had told the doctor his diagnosis as he had told it on the witness-stand. Appellant objected to the question, and moved to strike out the answer, on the ground that Dr. Clark was a competent witness whose deposition or attendance as a witness might be had; that the question and answer could only be admissible as an impeachment of Dr. Clark; that Dr. Clark did not testify about any such conversation, and no foundation had been laid for such impeaching testimony; that the introduction of this testimony was for the purpose of discrediting the testimony of Dr. Clark, admitted as before stated, is clearly shown by the record and admitted by the parties; that it was inadmissible at the time it was introduced, since the affidavit of Olds had not then been introduced and read to the jury, is clear; that it was permitted to go to the jury in anticipation of the introduction of the affidavit for a continuance, as was afterwards done, is apparent from the remarks of the court made at the time of the ruling. The affidavit was introduced and said testimony of Dr. Shanklin was neither withdrawn nor limited by any ruling of the court.

Section 419 Burns 1908, §410 R. S. 1881, provides for the kind and character of affidavit to be filed for the continuance of a cause on the ground of the absence of witnesses. Said section also provides that, if the adverse party will consent that on the trial the witness will testify to said facts as true, the trial shall not be postponed for that cause; and, ''in such case, the party against whom such evidence is used shall have the right to impeach such absent witness, as in the case where the witness is present or his deposition is used.''

There are two ways of impeaching a witness—one direct,

by showing his reputation for veracity or morality, the other by showing that said witness had made

5. statements out of court contradictory or inconsistent with his statements in court. In the latter case, before such contradictory or inconsistent statements can be shown, the witness sought to be impeached must be interrogated as to such

6. statements, and in such interrogation the time when and place where such statements were made must be fixed.

These are rules of the common law, and are so well established that citation of authorities is unnecessary. The reason for the rule being, that the witness thus sought to be impeached should have an opportunity of correcting or explaining any such statements. As was said in *M'Intire* v. *Young* (1843), 6 Blackf. 496, 39 Am. Dec. 443: ''It is a general rule of law, that when the credit of a witness is attempted to be impeached by showing that he had made a previous statement inconsistent with his testimony, he must be first questioned as to whether he made such a statement, in order to give him an opportunity of showing it was made, if made at all, in such a manner and under such circumstances as not to militate against the credibility of his testimony. * * * No question in reference to the supposed statement was asked the witness, nor does it appear that her attention was in any manner turned to the subject. She, had no opportunity to explain the statement if made. We can easily conceive that it was susceptible of such an explanation as to render it compatible with the fairness of her testimony. At least the supposition is very possible; and she should, therefore, have had an opportunity of making the attempt.''

It is also well settled that where the deposition of a witness is used, such witness cannot be impeached by showing contradictory statements, unless the foundation for such show-

ing has been made in the deposition. *Judy* v. *Johnson* (1861), 16 Ind. 371; *Jenkins* v. *Lutz* (1901), 26 Ind. App. 150; *Eppert* v. *Hall* (1893), 133 Ind. 417; *In re Noble* (1888), 124 Ill. 266; *Doe* v. *Wilkinson* (1860), 35 Ala. 453; *Conrad* v. *Griffey* (1853), 16 How. (U. S.) *38, 14 L. Ed. 835; *Johnson* v. *Kinsey* (1849), 7 Cobb (Ga.) 428; *Brown* v. *Gillett* (1903), 33 Wash. 264, 74 Pac. 386; *Pruitt* v. *State* (1890), 92 Ala. 41, 9 South. 406.

In the case of *Eppert* v. *Hall, supra,* the court say: "The deposition of a certain witness who had died before the trial was offered and read in evidence. The appellants sought to impeach him by giving in evidence another deposition of the same witness taken and used in another case between the appellee and certain other parties. The court excluded the latter deposition. This was not erroneous. No foundation had been laid for the impeachment. The death of the witness after the taking of the latter deposition did not change the rule requiring, as preliminary to his impeachment in this manner, that his attention be first called to the alleged contradictory statement, and the time and place it was alleged to have been made. This could have been done when the second deposition was taken. The parties having neglected at that time to lay the proper foundation, cannot now complain because death had made it impossible to lay such foundation."

It is clear under the section before quoted, that the testimony of Clark could only be impeached under the same rules as obtained had he been a witness or his deposition used. And, under the authorities cited, in either case, he could only have been impeached by contradiction after laying the proper foundation therefor. This is a fair and reasonable construction of the statute. The reasons for the rule, that before a witness who makes a statement under oath may suffer the obloquy of being impeached by contradiction in court he shall have an opportunity to

explain or deny the imputation, are so well established by long usage and common justice that it must be presumed that the legislature incorporated it in the statute in question. To hold otherwise would be to permit an absent witness to be condemned without being heard, and for an offense he may never have committed, since, as in this case, the witness sought to be impeached has made no statement under oath, but his character is assailed and he is impeached upon statements imputed to him by the affidavit of a third party. This illustrates the injustice of such a rule as to an absent witness. It would be equally unjust to parties litigant. Each party to a cause has a right to present his evidence and to have such evidence fairly considered, and neither should have an advantage on account of unavoidable misfortune of the other. To permit the absent witness to be impeached by contradiction of statements made by a third party would be both unfair and unjust. A statute, effectually to abrogate a rule of the common law, must be clear and explicit, and must be strictly construed. Applying these principles to the statute in question, it is apparent that the established rule of procedure is not thereby set aside. The proper foundation not having been laid therefor, the admission of said testimony of Dr. Shanklin was error. It is no excuse for appellee to say that she had no opportunity to question Dr. Clark. When the affidavit of Mr. Olds was presented, appellee had the choice of alternatives. She could accept the affidavit as being the testimony of Clark and go on with tne trial. If, however, the affidavit did not present all of the testimony she desired to elicit, she could have submitted to a continuance and thus could have obtained the testimony in such form as would have permitted her to introduce the impeaching testimony. She accepted the former, and, having done so, she cannot extend the force of the testimony thus produced.

It was suggested in oral argument that the record shows that the testimony of Dr. Shanklin did not get to the jury.

We cannot so read the record. The record shows that in the early examination the same questions were asked Dr. Shanklin, and upon objection that Dr. Clark's testimony had not been introduced the questions were withdrawn. Afterwards, as appears in the record, in the regular examination of Dr. Shanklin, the questions were asked, objections made, the objections overruled, exceptions taken, the answer given, and the motion to strike out made, which was overruled and exceptions taken. It was apparent that this was done in open court, and no showing made that it was not made in the full presence of the jury, and as a part of the regular order of proceedings. There is a suggestion in the ruling of the court in the motion to strike out the answer that something had not been read to the jury; but, taken in connection with the questions and objections, this remark clearly had reference to the affidavit of the testimony of Dr. Clark, and not to the questions propounded to the witness and the answers given thereto. The testimony of Dr. Clark was very important, and the testimony of Dr. Shanklin went directly to the point of discrediting him. The admission of this testimony of Dr. Shanklin was error, and, in view of the verdict returned, we cannot say that it was harmless. There are other questions presented, but in our view of the case it is unnecessary for us to pass upon them.

Judgment reversed.

Myers, Roby, Rabb and Comstock, JJ., concur; Watson, J., dissents.

## DISSENTING OPINION.

WATSON, J.—The main opinion holds that it was error for the trial court to permit the appellee to contradict the affidavit filed to postpone the trial of this cause by proving that Dr. J. T. Clark had made a different statement than the affidavit purported that he would testify to if present. The affidavit stated that if Clark were present he would testify as follows: "That said Clark made an examination of said

plaintiff immediately or within a few days of the alleged accident, and that he likewise, in company with other physicians, made an examination of her on or about February 20, 1905; that he made a careful examination of said plaintiff at both of the times that he examined her as aforesaid, and that he did not find any injury to the plaintiff or any disease with which she was suffering; and that from his said examination he would testify that she was well and suffering from no physical injury at the time of his examination.''

Appellee, to avoid a continuance, admitted that said Clark would testify to the facts contained in said affidavit as being true.    Afterwards, on the trial, appellant introduced in evidence said affidavit.    Dr. Shanklin, a witness for appellee, testified that he was present at the examination of appellee, and answered as to a conversation with Dr. Clark as follows: "Q.    What, if anything, did Dr. Clark say at the time you made the examination with him on the evening of October 18, 1904, as to the condition of her back?''    To which witness replied, over objection of appellant: "On the way back, driving back with the doctor, he said my diagnosis was correct.    I told him what my diagnosis was, and he said: 'That is correct as far as I can see.' ''    Dr. Shanklin further testified that he had told Dr. Clark his diagnosis of the case, and that he told him the same as he had testified to upon the witness-stand.    The appellant objected to the question, and moved to strike out the answer thereto, for the reason that the question and answer could only be admissible, if admissible at all, as tending to impeach Dr. Clark, and for the further reason that Dr. Clark had not testified in said case and no foundation had been laid to impeach him.    This affidavit was filed under §419 Burns 1908, §410 R. S. 1881, which provides in part as follows: "If, thereupon, the adverse party will consent that, on the trial, the facts shall be taken as true, if the absent evidence is written or documentary, and, in case of a witness, that he will testify to said facts as true, the trial shall not be postponed for that cause; and,

in such case, the party against whom such evidence is used shall have the right to impeach such absent witness, as in case where the witness is present or his deposition is used."

I am not unmindful that ordinarily there are other ways known to our practice by which a witness may be impeached. One way is provided by §532 Burns 1908, §508 R. S. 1881, another by showing that the general moral character of the witness for truth and veracity is bad.

It is within the power of the legislature to provide other and different modes by which a witness may be impeached and which is provided in §419, *supra*, when it provides that an absent witness may be impeached, "as in case where the witness is present or his deposition is used."

When a party admits that the affidavit contains certain facts, which the absent witness, if present, would testify to, he cannot introduce proof showing that the witness made different or contradictory statements on different occasions, unless the statute authorizes the contradiction in this manner. Hence, wherever the common-law rule prevails, the affidavit cannot thus be contradicted.

In Missouri, the statutes, as in the State of Indiana, authorize the disproval of the facts stated in the affidavit by showing that such absent witness made contradictory statements. In the case of *State* v. *Miller* (1878), 67 Mo. 604, the court said: "Before the trial commenced defendant applied for a continuance and filed his affidavit, stating the absence of Zac. Winn, who had been summoned as a witness in his behalf, and what facts he would testify to if present. The prosecuting attorney then admitted that, if present, Winn would so testify. Thereupon the court overruled the motion and ordered the trial to proceed. After defendant closed his evidence, having read to the jury his affidavit for a continuance as containing the testimony of Winn, the state was permitted to introduce a witness to testify to statements made by said Winn while testifying in the Green case [*State* v. *Green* (1877), 66 Mo. 631], contradicting some of the facts

which defendant's affidavit alleged that Winn would testify to. Defendant objected, because no foundation had been laid for contradicting Winn in that manner. The act of February, 1875, expressly authorizes a contradiction in that mode."

In my view of the provision in §419, *supra,* and in the light of the case just cited, the trial court did not err in permitting Dr. Clark so to testify, and this cause should be affirmed.

## On Petition for Rehearing.

Hadley, J.—In their petition for a rehearing, counsel for appellee insist that the record shows that the testimony of Dr. Shanklin referred to in the opinion did not go to the jury. The record is plain, and the testimony appears in the regular order of the examination of the witness; the last preceding question being in regard to the fees of the physician. Then follow the questions, objections and answers in regular order, with no intimation in the record that the jury had been withdrawn. The ambiguous remark of the court, "Well, it has not been read to the jury yet," cannot be held to contradict the showing on the face of the record. As suggested by appellant, the remark could not refer to the testimony of Dr. Shanklin, since his testimony was not being read. He was present and testifying orally.

It is also insisted by appellant's counsel that the evidence was competent, and some Missouri cases are cited, and the statement made that the statute is like the statute of Indiana. The Missouri statute, upon which the decisions cited are based, is essentially different from ours. Section 3596 of the practice act of Missouri, after providing for the reading of the affidavit for continuance in evidence, provides: "And the opposite party may disprove the facts disclosed, *or prove any contradictory statements made by such absent witness* in relation to the matter in issue and on trial." Under this

statute, the decisions cited are correct, but it will be seen that they would not be authority under our statute.

Rehearing denied.

Roby, C. J., Comstock, Myers, Rabb and Hadley, JJ., concur; Watson, J., dissents.