# NATIONAL COUNCIL, KNIGHTS AND LADIES OF SECURITY, v. OWEN.

Opinion Filed May 25, 1915.

(149 Pac. 231.)

1. APPEAL AND ERROR—Harmless Error—Admission of Evidence—Life Insurance. Where the answer of defendant charges that deceased had taken out large amounts of insurance in various companies, with a fraudulent design to maim himself and defraud said insurance companies, and the evidence shows deceased to have carried a large amount of insurance, and to have come to his death by reason of a gunshot wound, inflicted by himself, and the evidence as to the shooting was circumstantial, the case will not be reversed because the trial court admitted evidence of the good reputation of deceased.

2. CONTINUANCE—Admissions to Prevent—Impeachment—Prior Contradictory Statements—Deposition. Where a party agrees that the statements contained in an application for continuance may be read as the deposition of the absent witness, such party will not be allowed to impeach said testimony by showing that the witness had made prior statements inconsistent with and contradictory of the statements therein contained, without the attention of the witness having first been called thereto.

3. INSURANCE—Life Policy—False Statement in Application—Effect. A false statement in answer to a question in an application for insurance, which is made a strict warranty by the terms of the application and certificate, will avoid the certificate, in the absence of any allegation or proof of any fact that would amount to a waiver thereof.

4. SAME—Question for Jury—Conflicting Evidence. The truth or falsity of warranties in an application for insurance. where there is a conflict in the evidence, is a queston of fact for the jury.

(Syllabus by the Court.)

Kane, C. J., dissenting.

*Error from Superior Court, Grady County;*
*Will Linn, Judge.*

Action by Lulu Owen against the National Council, Knights and Ladies of Security. Judgment for plaintiff, and defendant brings error. Reversed and remanded for new trial.

*C. C. Herndon* and *Reford Bond,* for plaintiff in error.

*F. E. Riddle,* for defendant in error.

HARDY, J. Defendant in error commenced this action against plaintiff in error in the superior court of Grady county on a beneficiary certificate issued to Edward G. Owen, in his lifetime, in the sum of $3,000. The petition was in the usual form, and demanded judgment in the sum of $1,800, which it was alleged was due according to the terms of the certificate. In its first amended answer defendant society as a defense alleged that the insured had made certain false statements in his application for the certificate in question, and that such statements were warranties, and that by reason thereof said certificate never became effective as a contract of insurance; and, further, that said Edward G. Owen had intentionally inflicted upon himself the wound that caused his death, and therefore the beneficiary certificate was prevented by its terms from being of any effect whatever. Reply was filed, and at the trial plaintiff in error filed a motion for a continuance on the ground of absence of a certain witness. Defendant in error agreed that said application might be read as the depositions of the absent witness, and the motion was thereupon overruled, and the case tried to a jury, resulting in a verdict against the society. Motion for a new trial was overruled, and the case brought here for review.

Various assignments of error are considered, under four propositions, in the brief of counsel, and we shall adopt the order of counsel in our consideration of the same.

The first proposition presents error on the part of the court in admitting, over the objections and exceptions of defendant, testimony as to the good reputation of deceased, and error in charging the jury that such evidence was proper for their consideration and might be considered by them in arriving at their verdict.

In *Great Western Ins. Co. v. Sparks, Adm'r,* 38 Okla. 395, 132 Pac. 1092, 49 L. R. A. (N. S.) 724, the assured was the same as in the instant case. The defense there was that the assured had made certain false statements in his application for insurance, and evidence of the reputation of assured was admitted at the trial. This was held to be error, and in so holding the court said:

"The general character of the insured was not put in issue, except in so far as it was incidentally assailed by the allegations of the petition [answer]. The allegations of fraud were specific, and evidence tending to support them was direct, and not circumstantial. Under such circumstances, evidence of the general good character of the insured was inadmissible."

The fraud complained of was the false statements made by the insured in his application, and the evidence thereof was direct. In the instant case, in addition to alleging that insured made false statements in his application, it is alleged, further, that the insured took out accident policies in numerous accident insurance companies, amounting to a large sum of money, and deliberately and intentionally shot himself in the foot, with the intention of injuring and maiming himself in order to make a false and fraudulent claim against said accident insurance companies, and the said injury so inflicted resulted in the death of the assured, and that it was provided by the terms of said policy that, "should the death of said Edward G. Owen occur in consequence of violation of the laws of the United States or of any state or territory of the United States, then such certificate shall be void," and that the attempt of the said Edward G. Owen to defraud said insurance companies was in violation of the laws of the United States and of the state of Oklahoma. The evidence tended to show that the deceased had taken out policies in six or seven insurance companies, amounting to a total of $17,000 or $18,000, and that his death resulted from a

gunshot wound in the foot. The evidence as to the shooting is purely circumstantial, and it became a material inquiry as to whether said shooting was accidental, or intentionally done in pursuance of the alleged plan to defraud the insurance companies; and if so intentionally done, the policy by its terms would be void.

In .W. O. W. v. Welch, 16 Okla. 188, 83 Pac. 547, the defense was that the insured came to his death in consequence of his violation of the laws of the territory of Oklahoma, and the intent of the deceased at the time of the shooting which resulted in his death became a material matter of inquiry. The evidence as to his reputation was admitted, and the action of the court in so doing was assigned as error. The Supreme Court of the territory overruled this contention, saying:

"Where intent of the party charged is a material inquiry, and the facts and circumstances shown in evidence leave the question of intent in doubt, the character of the party charged may be shown to aid in the determination of such question."

In the case at bar the assured, whose acts are in question, is dead, and evidence as to the shooting which resulted in his death is circumstantial, and it is a material inquiry as to whether such shooting was accidental, or was intentionally done in pursuance of a fraudulent plan to take out large amounts of insurance, and then maim himself for the purpose of defrauding the insurance companies.

The early English cases recognized an exception to the general rule excluding evidence of reputation in civil cases, that where a party whose acts are in question is dead and unable to testify, and his intention is material, evidence as to his character may be introduced to offset other evidence calling in question the acts of said party. In the case of *Doe ex dem. Stevenson v. Walker,* 4 Esp. 50, it was

sought to impeach a will, and one of the subscribing witnesses sought to impute fraud to the other two, who were dead. Lord Kenyon said:

"That he was of opinion the evidence was admissible. * * * In the great case of *Joliffe's Will* Lords Dudley and Ward and other persons were examined as to the character of the persons by whom the will was prepared, and the legality of admitting such evidence was not doubted."

In *Bishop of Durham v. Beaumont*, 1 Camp. 207, Lord Ellenborough said:

"I fully accede to the doctrine laid on in *Doe on the Demise of Stevenson v. Walker*. There the attesting witnesses whose character was disputed were dead, and it was properly held that the party claiming under the will should have the same advantage as if they were alive. In that case they must have been personally adduced as witnesses, and their character would have appeared on their cross-examination, and, being dead, justice required that an opportunity should be given to show what credit was to be attached to their attestation of the will."

In *Provis et al. v. Reed*, 5 Bing. 435, Best, C. J., said:

"In many cases necessity forms the law. The necessity of admitting the evidence in this case is manifest, and the two decisions which have been cited, one of them from no less an authority than Lord Kenyon, are clearly in point. I have repeatedly tendered such evidence myself in similar cases when at the bar. I have had it tendered on the other side, and have never objected, and the common practice of Westminster Hall has always been to receive it. That practice is perhaps better evidence of the law even than decided cases."

See, also, 3 Blackstone's Commentaries, p. 368.

A similar exception has been recognized in this country. In *Ward v. Brown*, 53 W. Va. 227, 44 S. E. 488, which involved the execution of a will prepared by an attorney by the name of Knight, who was dead, and to whom was imputed fraud, it was said:

"It is well settled that evidence of character of third. persons as well as parties is admissible to a limited extent and in an exceptional way, even when parties are alive. That being true, the reason is much stronger when death has closed the lips of the person whose good faith and integrity is called in question. It is admitted that Mr. Knight was present at the time of the execution of the will and superintended and directed what was done. His connection with the *res gestae* being established, and the *bona fides* of the transction being questioned, and he being dead, so that the jury could not hear what he might have said had he been alive, nor have seen him and formed an estimate, from his appearance, demeanor, and testimony, of his character and capacity, it was proper to supply that. omission to the extent of showing what his character and capacity were."

In the case of *Bowerman v. Bowerman et al.*, 76 Hun, 46, 27 N. Y. Supp. 579, which was an action to set aside a deed made in 1884 by plaintiff to William D. Bowerman, deceased, it was alleged that plaintiff was induced to execute the deed by the fraud of decedent, and the evidence was circumstantial. Evidence of the decedent's reputation for honesty and integrity and general reputation of character during his lifetime was held to be admissible, and for error in excluding such evidence in connection with other errors the case was reversed. Evidence of reputation was also admitted in *Warner v. N. Y. Cent. R. Co.*, 45 Barb. 299. In *Daniels v. Dayton*, 49 Mich. 137, 13 N. W. 392, where several persons were charged with fraud, it was held that there was no error in admitting evidence that the reputation of one of the parties charged was good the year it was committed, on the ground that his supposed integrity would be material in determining the reliance the person defrauded might be expected to place on him. In *Kauffman v. Swar*, 5 Pa. 230, the admission of like evidence was held to be proper under the facts of the case. In *Werts v. Spearman*, 22 S. C. 200, quoting

from the decision in *Dawkins v. Gault*, 5 Rich. 153, it is said:

"Where an actual fraud is charged, perpetrated with a fraudulent intent, and the proof of the charge consists of circumstances, then good character, as in a case of crime, might be resorted to."

In *German American Mutual Life Insurance Co. v. Farley*, 102 Ga. 720, 29 S. E. 615, it is said:

"Where an effort is made to impeach a contract of insurance upon the ground that it was issued in consequence of the perpetration of a fraud by the assured upon the insurer, evidence of the good character of the assured is admissible to support his *bona fides* in the transaction."

In *Largent v. Beard* (Tex. Civ. App.) 53 S. W. 90, it was held that evidence tending to show that defendant was considered upright and honorable, and that his reputation was good, was proper. In *Fire Ass'n of Phil. v. Jones*, 40 S. W. 45, which was an action on an insurance policy, the Court of Civil Appeals of Texas said:

"Where plaintiff's character for truth, honesty and fair dealing is directly assailed by the defense pleaded, he may prove that his general reputation in such respects is good."

In *Allison v. McClun*, 40 Kan. 525, 20 Pac. 125, it was alleged that McClun collected certain notes, and converted the proceeds thereof to his own use, and withheld and concealed the evidence thereof, intending to cheat and defraud plaintiff out of his interest in the same. Evidence that McClun had the reputation of being prompt and honest in his dealings was admitted. The court declined to reverse the case for the admission of this testimony, holding that it was probably admissible under the issues made, and for the additional reason that it only tended to prove what the law would presume in the absence of evidence. See, also, *Holmberg v. Dean*, 21 Kan. 73.

By its answer plaintiff in error has accused the deceased of a systematic plan to defraud insurance companies, and, in addition thereto, of willfully violating the laws of the state by maiming himself in order to collect such insurance, and the evidence as to the shooting being purely circumstantial, and the assured being dead, under the issues made by the pleadings and the conditions disclosed by this record, we think the court did not commit reversible error in admitting the evidence complained of. It might be said that the evidence was of slight probative value, and for that reason should not be admitted, but its weight and value was a question for the jury. Besides, the law presumed that the said Edward G. Owen bore such reputation as the evidence tended to prove, and evidence of a fact in evidence or already presumed should not operate to reverse the cause, unless substantial prejudice has resulted therefrom.

At the trial of the case plaintiff in error filed a motion for a continuance on account of the absence of one Dr. T. H. East, which motion was supported by the affidavit setting out the testimony which it was expected would be given by the said Dr. T. H. East if he were present at the trial. To avoid a continuance the defendant in error agreed that the motion for a continuance could be read in evidence as the deposition of the said Dr. T. H. East, and thereupon the motion for a continuance was overruled, and the case proceeded to trial. Upon the trial the said motion for a continuance was read as the deposition of the absent witness, and the defendant in error then introduced evidence for the purpose of contradicting the testimony of the said East, by showing that said witness had made statements contradictory to his testimony as contained in said motion for a continuance; and this action of the court is assigned as error.

The action of the court in overruling the motion for a continuance is predicated upon section 5045, Rev. Laws 1910, which provides that, when an application for a continuance sufficient in form is presented, and the adverse party will consent that on the trial the evidence alleged in the affidavit shall be read and treated as the deposition of the absent witness, no continuance shall be granted on the ground of the absence of such evidence. The question here presented has not been heretofore decided by this court. In *Kuhn v. Poole*, 27 Okla. 535, 112 Pac. 962, in discussing the question as to whether a witness may be impeached without first calling his attention to the time, place, and person involved in the supposed contradictory conversation, the court held that this was not permissible, and said:

"Before a witness can be impeached by proof of contradictory statements made by him outside of the courtroom, his attention must first be called to the time, place, and person involved in the supposed contradictory conversation, in a manner sufficiently definite that there is a reasonable certainty that the recollection of the witness will be refreshed and his attention directed to the alleged conversation."

In *Robinson v. State*, 8 Okla. Cr. 667, 130 Pac. 121, the Criminal Court of Appeals, considering a similar question, said:

"Several impeaching questions were asked and objections sustained. The rulings of the court were correct, for the reason that there was no foundation whatever laid for impeaching testimony. Wallace, as a witness, was never asked as to the statements referred to. This was a necessary prerequisite to the admission of such evidence. 2 Wig. on Ev., secs. 1019, 1025 *et seq.*"

Section 5045, Rev. Laws 1910, is identical with section 315, Civil Code of Kansas (section 1191, Dassler's Kan. Civ. Code), and the precise question here presented was determined by that court in the case of *State v. Bartley,*

48 Kan. 421, 29 Pac. 701, where the court held the evidence inadmissible, and for error in permitting its introduction reversed the case. See, also, the following: *Greer v. Higgins*, 20 Kan. 421; 7 Ency. Ev. p. 103; 40 Cyc. p. 2723; 30 Am. & Eng. Ency. Law (2d Ed.) p. 1126; *St. L., etc., R. Co. v. Sweet*, 57 Ark. 287, 21 S. W. 587; *N. Y., etc., R. Co. v. Flynn*, 41 Ind. App. 501, 81 N. E. 741, 82 N. E. 1009; *Gafford v. State*, 125 Ala. 1, 28 South. 406; *Pool v. Devers*, 30 Ala. 672; *Gregory v. State*, 140 Ala. 16, 37 South. 259; *Doe ex dem. v. Wilkinson*, 35 Ala. 453; *Chicago, etc., R. Co. v. Lammert*, 19 Ill. App. 135; *North Chicago St. R. Co. v. Cottingham*, 44 Ill. App. 46; *Williamson v. Peel*, 29 Iowa, 458; *State v. Shannahan*, 22 Iowa, 435; *Fulton v. Hughes*, 63 Miss. 61; *State v. Guy*, 107 La. 573, 31 South. 1012; *State v. Carter*, 8 Wash. 272, 36 Pac. 29; *Griffith v. State*, 37 Ark. 324; *Ryan v. People*, 21 Colo. 119, 40 Pac. 775; *State v. Wiggins*, 50 La. Ann. 330, 23 South. 334; *Matthews v. Dare*, 20 Md. 248; *Stacy v. Graham*, 14 N. Y. 492; *Runyan v. Price*, 15 Ohio St. 1, 86 Am. Dec. 459; *Titus v. State*, 7 Baxt. (Tenn.) 132; *Ayers v. Watson*, 132 U. S. 394, 401, 10 Sup. Ct. 116, 33 L. Ed. 378, 381; *Unis v. Charlton*, 12 Grat. (Va.) 484.

We think the court committed error in permitting the introduction of the evidence complained of.

The third proposition presented is error of the court in the instructions given and in the instructions refused. The court instructed the jury, in substance, that although the answers and statements made in the application and contract of insurance were warranties, a substantial compliance with all the agreements, statements, and answers made in the application and contract was all that was required of the insured entitling plaintiff to recover. To the giving of this instruction plaintiff in error excepted, and asked the following instruction:

"The court further instructs the jury that, if you find from the evidence in this case that any one or more of the statements or answers contained in the application of Edward G. Owen for the policy of insurance or beneficiary certificate issued to him by the defendant fraternal order in pursuance of said application were false, then in that event your verdict should be for the defendant, regardless of whether the said statements and answers, or any one of them, was material or immaterial, and regardless of whether or not the said Edward G. Owen knew of the falsity of said statements and answers of any one of them at the time it was made."

The application contained the following stipulation:

"I hereby make application for a beneficiary certificate from the National Council, Knights and Ladies of Security. And I hereby declare that the foregoing answers and statements and the answers to the questions propounded to me by the medical examiner are warranted to be true and full, and I acknowledge and agree that the said answers and statements with this application shall form the basis of my agreement with the order, and constitute a warranty. I hereby make my medical examination a part of this application, and agree that this application and medical examination shall be considered a part of my beneficiary certificate."

By the terms of the beneficiary certificate it is provided:

"This beneficiary certificate is issued by said National Council and accepted by the member only upon the following express warranties, conditions, and agreements: (1) That the application for membership in this order, made by the said member, together with the report of the medical examiner, which is on file in the office of the National Secretary. and both of which are made a part hereof, are true in all respects, and each and every part thereof shall be held to be a strict warranty, and to form the only basis of the liability of the order to said member, or said member's beneficiaries, the same as if fully set forth in this certificate; (2) that, if said application and medical examination shall not be true in each and every part thereof, then this beneficiary certificate shall, as to said member

or said member's beneficiaries, be absolutely null and void; (3) this certificate is issued in consideration of the warranties and agreements made by the person named in this certificate, in said member's application to become a member of this order, and in said member's medical examination, and also in consideration of the payments made when initiated as a member, and said member's agreement to pay all assessments and dues to become due during the time said member shall remain a member of this order, in the manner prescribed in the laws of the order."

It will thus be seen by the terms of the contract the parties have stipulated that both the answers and statements in the application and the answers made to the medical examiner are true in all respects, and each and every part thereof shall be held to be a strict warranty. While it is true that warranties are not favored in the law, yet, in a case where the language of the contract is plain and unequivocal, the court cannot refrain from giving to the contract of the parties the meaning which its plain and unambiguous language imports, and the question of their materiality does not enter into the case, for the parties by their contract have made them material. The instruction given, in the absence of any allegation or proof of waiver, as applied to the terms of the contract in question, we think, does not correctly state the law; and the parties have expressly stipulated that, if said application and report of the medical examiner are not true in all respects, and each and every part thereof, the certificate shall be void, and by its terms, if any of the statements therein contained are untrue, the same will render the certificate void, and the instruction asked should have been given. *Eminent Household Col. Woodmen v. Prater*, 24 Okla. 214, 103 Pac. 558, 23 L. R. A. (N. S.) 917, 20 Ann. Cas. 287; *National Union v. Kelley*, 42 Okla. 98, 140 Pac. 1157; *Jeffries v. Mut. Life Ins. Co.*, 22 Wall. 47, 22 L. Ed. 833; *Ætna Life Ins. Co. v. France*, 91 U. S. 510, 23 L. Ed. 401; 3 Cooley's Briefs on Ins. 1950; 1 Bacon's Benefit

Societies, section 197, and cases cited; *Beard v. Royal Neighbors of America,* 53 Or. 102, 99 Pac. 83, 19 L. R. A. (N. S.) 801, 17 Ann. Cas. 1199; *Hoover v. Royal Neighbors of America,* 65 Kan. 616, 70 Pac. 595; *Kelly v. Life Ins. Co.,* 113 Ala. 453, 21 South. 361; *Cobb v. Covenant Mut. Ben. Ass'n,* 153 Mass. 176, 26 N. E. 230, 10 L. R. A. 666, 25 Am. St. Rep. 619; *Baumgart v. M. W. A.,* 85 Wis. 546, 55 N. W. 713.

It is also urged that the court erred in refusing to direct a verdict for the defendant, and insisted that this court, instead of reversing the cause and remanding it, should enter judgment in this court for defendant. The question as to the truth or falsity of answers made when warranties in an application for insurance, where there is a conflict in the testimony, is a question of fact for the jury, and we think there is sufficient evidence to submit the case to the jury. *Continental Casualty Co. v. Owen,* 38 Okla. 107, 131 Pac. 1084.

For the errors indicated, the cause is reversed, and remanded for a new trial.

All the Justices concur, except KANE, C. J., who dissents.