## EMINENT HOUSEHOLD OF COLUMBIAN WOODMEN v. PRATER.

No. 193.      Opinion Filed July 13, 1909.

(103 Pac. 558.)

1.   INSURANCE—Life Insurance—"Serious Illness." The term "serious illness," as used in an application for a life insurance policy, means such an illness as permanently or materially impairs, or is likely permanently or materially to impair, the health of the applicant.

2.   INSURANCE—Life Insurance—Application—False Statements. An applicant for a life insurance policy warranted in her application that her answers to the medical examiner on the reverse side of her application were "true and accurate," and that they should constitute the basis for the covenant. The policy recited that it was executed in consideration of the warranties made in the application, and that the application should be made a part of the covenant. Held, that the answers of the insured to the medical examiner were her warranties, and that a false statement made therein by her rendered the policy void.

3.   INSURANCE—Life Insurance—"Spitting or Coughing of Blood." The phrase "spitting or coughing of blood," as used in a question propounded by a medical examiner to an applicant for a life insurance policy, as to whether she had ever had "spitting

or coughing of blood," means the disorder so called, whether the blood comes from the lungs or from the stomach.

(Syllabus by the Court.)

*Error from District Court, Love County; Stilwell H. Russell, Judge.*

Action by William H. Prater against the Eminent Household of Columbian Woodmen. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Smith & Hastings* and *Robert E. Lee,* for plaintiff in error, citing: 3 Cooley's Briefs on Insurance, pp. 1935, 1936, 1950 1951, and cases cited; *Cobb v. Covenant, etc., Ass'n,* 153 Mass. 176.

*H. C. Potterf* and *E. A. Walker,* for defendant in error.

Hayes, J. This is an action on a policy of life insurance, in which defendant in error, plaintiff below, is the beneficiary. From a judgment in favor of plaintiff for the amount of the policy, plaintiff in error, defendant below, brings this proceeding in error. The policy was taken out by Elizabeth Prater, plaintiff's mother, on the 19th day of December, 1905, who died on the 17th day of February, 1906. The insurance order by its answer admits the execution and delivery of the policy and the death of the insured, but denies liability under the policy upon several grounds. Under the state of the record in this case it will only be necessary to mention and consider two of the questions raised in defendant's answer as defenses. It alleges, first, that Mrs. Prater, in her application for the policy, had stated that she had never had hemorrhage or inflammation of the lungs, spitting of blood, and had never been seriously sick, nor attended by any physician during any such serious sickness, that such statements were by her application and the contract of insurance made her warranties upon which the policy was issued, and that such statements were untrue. Second. That she had made the misrepresentations aforesaid knowing them to be untrue; that they were material, and were relied upon by defendant when it issued the policy. The trial was to the court without a jury, who made a general finding

for plaintiff. Under our view of this case it will be necessary for us to investigate the facts and the law to determine only whether there was a breach of warranty by the insured.

Some of the alleged misrepresentations complained of by defendant are in the application of the insured; others are in her answers to questions in the worthy physician's report on the reverse side of the application. There is no contention by plaintiff that the statements made in the application are not, by the provisions of the application and the policy, made warranties of the applicant, and we shall first ascertain whether there was any breach of warranty by reason of false statements made in the application. The following questions and answers occur in the application:

"Q. Give date of last serious illness, month and year. A. Was never seriously ill. Q. What was it? A. Nothing. Q. Name and address of attending physician. A None."

In the month of August, 1904. deceased became ill one afternoon, and suffered from hemorrhage. She spit up much blood. A physician was called, and the physician who attended her testified at the trial that deceased was at that time very sick; that she bled profusely from the lungs; that her pulse ceased beating, and that she became cold and clammy; that life was almost gone; and that she coughed up blood at almost every breath. Other witnesses corroborate the attending physician's statement that decedent had a profuse hemorrhage at that time, and that her condition was alarming, and there is evidence that she continued in a state of impaired health from that date up till the time of her death, and that subsequent to this illness, she was under the treatment of a Christian Scientist, but the evidence as to the severity of this illness is conflicting. Plaintiff testified that his mother recovered immediately and entirely after this illness. There is also evidence from other witnesses who lived at that time as neighbors of the deceased, who did not see her when she had the hemorrhage, but who saw her within a day or two thereafter, to the effect that she appeared to be in good health, and that in her appearance she bore no evidence of having suffered from a serious

illness. There is further evidence to the effect that her health after this illness was better than usual until she was attacked by her last illness. On the other hand, there is evidence that at the time of the hemorrhage deceased was afflicted with consumption; that she continued to be so afflicted until her death; that her death was due to this disease, but this evidence is controverted.

On the conflicting state of the evidence as to whether the illness of the deceased during August, 1904, was a serious illness it was for the jury or court to whom the case was submitted to decide. The question propounded to applicant did not require her to give information as to the last illness she had suffered, but the last *serious* illness. Not every illness is serious. An illness may be alarming at the time, or thought to be serious by the one afflicted, and yet not be serious in the sense of that term as used in insurance contracts. An illness that is temporary in its duration, and entirely passes away, and is not attended, nor likely to be attended, by a permanent or material impairment of the health or constitution, is not a serious illness. It is not sufficient that the illness was thought serious at the time it occurred, or that it might have resulted in permanently impairing the health. *Insurance Co. v. Wilkinson,* 13 Wall. 222, 20 L. Ed. 617. A cold may be, and sometimes is, followed by pneumonia, pleurisy, abscess of the lungs, and consumption, but to hold that because a cold may be attended or followed by such consequences it is a serious illness, and that a failure to mention such in response to an inquiry in an application for insurance as to the nature and character of any serious illness the applicant has suffered, would result in invalidating almost all contracts of insurance, the covenants of which are based upon the statements in the application as warranties; for, if a careful investigation should be made in the lives of persons insured, in almost every life there would be found some incident of illness of such ordinary occurrence and insignificance in its effect, yet of possible seriousness, which the applicant, without careful scrutiny and accurate recollections of his past life, has overlooked to mention. "A serious illness is a grave, important,

weighty trouble." *Brown v. Insurance Co.*, 65 Mich. 306. 32 N. W. 610, 8 Am. St. Rep. 894. In the Century Dictionary it is defined. to be "an illness attended by. danger, giving rise to apprehension." In *Caruthers v. Kansas Mut. Life Ins. Co.* (C. C.) 108 Fed. 487, a negative answer of the applicant to the question as to whether he had ever had "any serious illness, constitutional disease, or surgical operation" was held not a false representation which would avoid the policy as a breach of warranty because applicant once broke his leg,' which was set and attended by a physician. "A sickness may be very bad and very sad, and yet not serious. Any permanent or material impairment of health" is a serious illness. *Drakeford v. Supreme Conclave, etc.*, 61 S. C. 338, 39 S. E. 523; *Masons Benev. Soc. v. Winthrop,* 85 Ill. 537. Upon the conflicting evidence as to deceased's condition within a day or two after the hemorrhage, and as to the condition of her health thereafter until her last illness, and the entire absence of any evidence that such loss of blood as occurred to her on that day was likely to result in permanent or material impairment of her health, the general finding of the trial court in favor of the plaintiff is conclusive against defendant as to the nature of that illness. *Insurance Co. v. Wilkinson, supra; Hockaday v. Jones,* 8 Okla. 156, 56 Pac. 1054.

The insured's answer that she was not attended by any physician was not false, for this question had reference to the physician who attended her during a serious illness, and was not intended to elicit from her information as to the name and address of the attending physician at the time of any other illness than inquired about by the preceding questions. That such was the intention of the parties is indicated by a subsequent question in the application which reads as follows: "When did you last consult a physician, and for what?" On the reverse side of the application were the statements of the worthy physician who made the examination of the insured for the company, together with certain questions propounded by him to the insured and her answers thereto. Among such questions and answers are the fol-

lowing: "Q. Have you ever had spitting or coughing of blood? A. No." That the answer to this question is untrue and inaccurate is shown by preceding statements herein as to the evidence in this case. Plaintiff, who testified in his own behalf, has not denied, but admits, that in August, 1904, a little more than a year before the application was made for the policy of insurance, his mother suffered from an attack of illness during which she spit up blood. Nor is there any controversy in the evidence that her coughing of blood at that time was in considerable quantity. The attending physician described her condition resulting from the hemorrhage as being dangerous, and without hope of recovery; that the loss of blood "was sufficient to render the vessels of the extremity without any current," and "life was almost gone, and blood was being coughed up with every breath." This testimony of the physician is corroborated by other witnesses, who were present, and plaintiff admits the coughing of blood, and that it was in sufficient quantity that he and the members of the family and the neighbors were greatly excited; that a physician was called, but, when asked as to the exhausted and weakened condition his mother was reduced to by the loss of blood, he stated that he did not remember. Counsel for plaintiff insists that the insured made said answer to the physician without intent to deceive, and that since the court, by a general finding, has found that the insured, at the time of her application and the issuance of the policy, was in sound, insurable health, the untruthfulness of this answer, if it is untruthful, is only immaterial misrepresentation. Plaintiff cites and relies principally upon the following cases to support his contention: *Home Life Ins. Co. v. Fisher,* 188 U. S. 726, 23 Sup. Ct. 380, 47 L. Ed. 667; *Moulor v. Amer. Life Ins. Co.,* 111 U. S. 335, 4 Sup. Ct. 466, 28 L. Ed. 447; *Conn. Life Ins. Co. v. Union Trust Co.,* 112 U. S. 250, 5 Sup. Ct. 119, 28 L. Ed. 708; *Washington Life Ins. Co. v. Haney,* 10 Kan. 525. An examination of the facts upon which those cases are based will clearly distinguish them from the case at bar, and will show that they are not in point.

In *Home Life Ins. Co. v. Fisher* the statements to the medical examiner were not made a part of the application, and the warranties of the application and the policy did not extend to them, but the trial court instructed the jury in language which was equivalent to holding that such statements in the medical examination were the warranties of the insured, and the jury found against the company upon the alleged breach of warranties. The following language is used by Mr. Justice Holmes:

"The jury were instructed that, if they found 'either one to be true that, before Maclean made application, he drank liquors either freely or to excess, or at the time that he made the application he had a habit of drinking liquor,' they were to find for the defendant; the declaration to the medical examiner thus being put upon the same footing as the application. The jury found for the plaintiff. Therefore they must be taken to have found categorically that no one of the supposed facts was true; or, in other words, that all of the above-recited answers were correct. If so, it does not matter whether they were warranties or not. There is a suggestion, to be sure, that in the latter case the defendant would have had to prove only the 'literal' falsity of the statement, whereas, in the other, proof of its substantial falsity was required. But the plain question of fact was put to the jury with no such niceties of discrimination. They found a plain answer, and the distinction comes too late now."

In *Moulor v. American Life Ins. Co.* the company defended against the policy on the ground that the insured had in his application stated that he had never been afflicted with scrofula, asthma, or consumption prior to the making thereof. There was evidence tending to show that the insured had been afflicted with those diseases, or some of them, prior to that time, but there was also evidence showing that he did not know or believe that he had ever been afflicted with them in a sensible or appreciable form. The application contains a stipulation that the insured declared and warranted that his answers therein were fair and true, and acknowledged and agreed that the application should form a part of the contract of insurance; and, if there was any answer therein made by him untrue or evasive, or any misrepresentation or con-

cealment of fact therein, the policy granted upon the application should be null and void. The policy of insurance purported to have been issued upon the basis of the representations and anwers in the application. The two instruments of writing, to wit, the application and the policy, did not treat the statements of the insured in the application in the same manner; in the policy they were treated as his representations, and the court, discussing this condition of the contract, used the following language:

"It is true that the word 'warranted' is in the application; and, although a contract might be so framed as to impose upon the insured the obligations of a strict warranty, without introducing into it that particular word, yet it is a fact, not without some significance, that that word was not carried forward into the policy, the terms of which control when there is a conflict between its provisions and those of the application. The policy upon its face characterizes the statements of the insured as representations. Thus we have one part of the contract apparently stipulating for a warranty, while another part describes the statements of the assured as representations. The doubt as to the intention of the parties must, according to the settled doctrines of the law of insurance recognized in all the adjudged cases, be resolved against the party whose language it becomes necessary to interpret. The construction must therefore prevail which protects the insured against the obligations arising from the strict warranty."

In *Washington Life Insurance Co. v. Haney* the insured was relieved from the strict warranties of his application by language in the application which fixed the measure of truthfulness required. The application in that case required the applicant to answer such questions only "to the best of his knowledge and belief," briefly and explicitly, and provided "that any wilfully untrue or fraudulent answer" shall avoid the policy. No such expressions are to be found either in the policy or in the application involved in this case. The court said in that case:

"If the application propounds certain questions, and indicates in what manner they must be answered, it is enough that they are answered in that manner; and, when the policy is based upon

the statements and declarations of the application, it is based upon them made in the manner and under the rules laid down by, the company in the application."

Warranties in insurance policies are not favored in law; and, where the language used by the parties to an insurance contract prepared by the insurance company is susceptible of two constructions, the courts favor that construction which makes a given statement a representation rather than a warranty, and strictly construes the policy against the company.  Warranties will not be made by construction, and statements of the insured will be held warranties only when they necessarily result from the nature of the contract, or appear on the face of the policy or in its body. Declarations made by the insured to the medical examiner of an insurance company are not made warranties by the provision of the application, which warrants these statements, in the application to be true, full, and complete, where such medical examination is not part of the application, either by being embodied therein, or by reference thereto. *Higbee v. Guardian Mut. Life Ins. Co.*, 66 Barb. (N. Y.) 462. But in the case at bar the application begins with the following sentence:

"I hereby make application for beneficial membership and warrant the following statements and the answers to the 'Worthy Physician' on the reverse side hereof to be true and accurate, and agree that they shall constitute the basis for the covenants."

The answer of the applicant to the worthy physician which defendant claims to be false was among her answers to the physician, and contained on the reverse side of the application.  The policy of insurance provides:

"This covenant is executed in consideration of the warranties made in the application of this guest and of compliance on the part of this guest with the constitution and by-laws of this fraternity, now existing or as hereafter legally amended, all of which and the application of this guest are a part of this covenant."

What were the warranties made by the applicant in her application? They were, first, that the statements therein made were true and accurate; second, that her answers to the worthy

physician were true and accurate. These are the warranties made by the insured which it is stipulated in the policy is the consideration of the covenant. If no reference had been made in the application to her answers to the worthy physician, or no stipulation had been placed therein by which such answers were warranted to be true and correct, and were to be the basis of the covenant, the medical examination having been separate from the application, the case would then have fallen within the rule of *Higbee v. Guardian Mut. Life Ins. Co., supra.* But the parties to this contract have, by specific stipulation which is not ambiguous, agreed in the application that applicant's answers to the worthy physician, as well as her statements in the application, should be her warranties, and should be the basis of the covenant, and the policy expressly stipulates in language that is unequivocal, and requires no construction that the consideration of the execution of the covenant is the warranties made by the applicant in her application, and that the application is a part of the contract. The insured stipulates in the application that both the statements in the application and her answers in the worthy physician's report on the reverse side thereof are true and accurate, and shall be her warranties, and shall form the basis of the covenant.

By reference in her application to answers made on the reverse side thereof to the worthy physician, and by agreeing in the application that such answers should constitute the basis of the covenant, insured made them a part of her application, and by the terms of the policy, and the acceptance thereof by her, they became part of the contract of insurance, and she thereby warranted that her answer to the question whether she had ever spit or coughed up blood was "true and accurate."

In Cooley's Briefs on Insurance (volume 3, p. 1935) the general rule is said to be:

"It has been generally accepted doctrine that, where the application warrants the statements therein to be full, complete, and true, and the policy recites that it is issued in consideration of the statements, agreements, and warranties in the application, which

is referred to and made a part of the contract, such statements and agreements become warranties."

In 25 Cyc. p. 798, the same rules is expressed in somewhat similar language, as follows:

"To create a warranty or condition precedent, the statement relied on must be made a part of the contract by incorporating in the policy either the statement itself or an appropriate reference thereto. If the application is not made a part of the contract by reference in the policy, a warranty in the application alone as to the truth of the statement made therein is not a part of the contract in such sense that error or mistake in such statements will avoid the policy without regard to their materiality as representations."

The application specifically warrants the answers of applicant to the physician, and specifically agrees that such answers shall form the basis of the covenant, and the policy makes the application a part thereof. It is unnecessary for us to discuss whether the untrue answers to the questions of the worthy physician in controversy are material or immaterial, for the contract had made the applicant's answers her warranties. A statement warranted to be "true and accurate," if untrue, will prevent the policy from attaching as a contract of insurance, without regard to whether the statement is material or immaterial; and, where there has been a breach of a warranty, the policy is void, though the statement upon which the breach of a warranty is predicated is in no way material to the risk. Cooley's Briefs on Insurance, p. 1950; *Hoover v. Royal Neighbors*, 65 Kan. 616, 70 Pac. 595; *Cobb v. Mut. Benefit Ass'n*, 153 Mass. 176, 26 N. E. 230, 10 L. R. A. 666, 25 Am. St. Rep. 619; *Kelly v. Life Ins. Clearing Co.*, 113 Ala. 453, 21 South, 361. That which might have been immaterial has been made material; that which might have been unimportant has by stipulation of the parties been raised to importance. It has not been left to the jury or to the court to determine whether the insured's answers to the physician were material, and became the basis of the insurance company's contract, for the parties have settled this question by stipulation in the contract.

Plaintiff insists that there is some controversy in the evidence as to whether deceased had ever had spitting of blood in the sense that he contends it was used in the worthy physician's report. He contends that these terms have reference only to hemorrhage from the lungs, and there is some conflict in the evidence as to whether the spitting of blood that occurred in August, 1904, was from the lungs or from the stomach. We do not think that the language used in the contract can be limited to mean only blood from the lungs. The exact language is "spitting or coughing of blood." It is unnecessary for us to determine whether this language would include any spitting of blood, however small in quantity and unimportant, such as might come from a wound of the gums, or the removal of a tooth, or the biting of the tongue, for that question is not involved under the facts in this case, but it would include the disorder by that name called, whether the blood came from the stomach or from the lungs, when it had assumed such proportion as to be disease. There is evidence that the insured coughed and spit up blood at other times before the issuance of the policy than at the time during the month of August, 1904, and such evidence is not controverted. There is evidence on the part of some of the witnesses who testified that they never knew of her having done so, but such evidence is rather as to the negative knowledge of the witnesses than a denial that such fact existed. It is unnecessary for us to consider the intentions of applicant in giving an untrue answer to the question, for whether it was intentional or an oversight is immaterial so far as it affects the contract. The falsity of the answer, irrespective of her intention in giving it, avoided the policy, since, by her warranty, the truthfulness and accuracy of her answers were made prerequisite to the existence of the contract.

The judgment of the lower court is reversed, and the cause remanded.

Dunn, Turner, and Williams, JJ., concur; Kane, C. J., not participating.