## SHAWNEE LIFE INS. CO. v. WATKINS.

No. 5878.   Opinion Filed March 7, 1916.

(156 Pac. 181.)

1. **INSURANCE—Life Insurance—Misrepresentations of Applicant— "Company."** In an application for life insurance, to the question, "Have you ever applied to any agent or company for insurance or for restoration of a lapsed policy without having received a policy of the exact kind and amount applied for?" applicant answered, "No," and to the question, "Has any company or as-

sociation ever declined or postponed your application for insurance or offered you a policy different to the one applied for?" "When?" "What Company?" he answered, "No." Previous thereto he had applied for a second certificate in the Endowment Rank of the Knights of Pythias, and his application had been rejected. **Held,** that the answers given were not false and did not avoid the policy.

2.    **INSURANCE—Life Insurance—Construction.** Where the meaning of language in a policy of life insurance or in the application therefor is ambiguous or susceptible of two different constructions, the same will be strictly construed against the insurer and that construction adopted which is most favorable to the insured.

3.    **TRIAL—General Finding—Construction.** Where a case is tried to the court without a jury and the court makes no special findings of fact, a general finding in favor of plaintiff includes a finding upon every fact necessary to support the judgment.

4.    **INSURANCE—Life Insurance—Misrepresentations in Application —Intent—Question for Jury.** The question as to whether certain answers given to questions in an application for insurance are false, and as to the intent of the applicant in making them, is a question of fact for the jury, or for the court sitting as a jury.

(Syllabus by the Court.)

*Error from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

Action by Ophelia A. Watkins against the Shawnee Life Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*B. B. Blakeney, J. H. Maxey,* and *Edw. Howell,* for plaintiff in error.

*Geo. S. Ramsey, Edgar A. de Meules, Malcolm E. Rosser,* and *Sol H. Kauffman,* for defendant in error.

HARDY, J.    Defendant in error, plaintiff below, commenced this action in the superior court of Muskogee county, against plaintiff in error, defendant below, to re-

cover upon a certain policy of life insurance, issued upon the life of Isom E. Watkins, deceased, husband of plaintiff.

The only issue presented is the effect to be given to certain questions and answers in the application for said insurance. In the application this question was asked: "Have you ever applied to any agent or company for insurance or for restoration of a lapsed policy without having received a policy of the exact kind and amount applied for (state fully, and when)?" To which deceased answered "No." And also the following question: "Has any company or association ever declined or postponed your application for insurance or offered you a policy different from the one applied for, when, what company?" To which deceased answered, "No." It appears that previous to making this application deceased had made two applications for insurance in the Endowment Rank, Knights of Pythias, and one of them, under date of October 31, 1910, had been rejected by that order; and it is urged that by reason of the false answers so made the policy was avoided.

Section 3402, Rev. Laws 1910, being under chapter 38, art. 1, entitled, "Insurance," is in part as follows:

"In this article, unless the context otherwise requires, 'company' or 'insurance company,' shall include all corporations, associations, partnerships or individuals engaged as principals in the insurance business, except fraternal and benevolent orders and societies."

Section 3486, art. 3, of said chapter 38, defines "fraternal beneficiary associations" as follows:

"A fraternal beneficiary association is a corporation, society or voluntary association, formed or organized and carried on for the sole benefit of its members, and their beneficiaries, and not for profit. Each association shall

have a lodge system with ritualistic form of work, a representative form of government, and shall make provision for the payment of benefits in case of death, and may make provision for the payment of benefits in case of sickness. * * *"

Section 3505 of the same article excludes from the operation thereof all corporations, societies, or associations carrying on the business of life, health, casualty, or accident insurance for profit or gain, and limits its application to fraternal beneficiary associations, as defined in section 3486, *supra,* and expressly provides:

"This article shall not affect or apply to any grand or subordinate lodge of the Ancient Order of Free and Accepted Masons, Independent Order of Odd Fellows, Improved Order of Red Men, or Knights of Pythias, as they now exist, nor to similar orders or secret societies, nor to any association not working on the lodge system, or which limits its certificate holders to a particular class or to the employees of a particular town or city, designated firm, business house or corporation."

Section 3402 is a definition of the meaning to be given to the terms "company" and "insurance company," and a declaration of what shall be included within the meaning thereof, excluding therefrom fraternal and benevolent orders and societies; while section 3486 specifically defines "fraternal beneficiary associations," intended to be regulated by said article 3, specifically excluding from the operation thereof the Knights of Pythias and kindred orders. These questions must be considered and construed together, and when this is done it cannot be said that it is clear it was the intention of the defendant in propounding said inquiry to elicit information as to an application for a certificate in such an order as the Knights of Pythias, which by the provisions of the statute

regulating the business of life insurance is expressly ex-
cluded from the operation thereof. *Fidelity Mut. Life
Ass'n v. Miller*, 92 Fed. 63, 34 C. C. A. 211. It is well-
settled rule, supported by the great weight of authority,
in the construction of insurance policies of the character
here involved, to construe all langauge used to limit the
liability of the company strictly against the company. It
is a fact recognized by the courts that policies and applica-
tions are drawn by legal advisors of the companies, who
study with care the decisions of the courts, and with this
in mind seek to limit as narrowly as possible the liability
assumed by the company which issues the policy. This
being true, it is a rule deemed fair by the courts to re-
solve all doubt and ambiguity in favor of the insured and
against the insurer, for the reason that where applications
and contracts are drawn with great nicety by men skilled
in the law of insurance, for the purpose of eliciting full in-
formation of all circumstances which would aid the com-
pany in determining the desirability of a proposed risk
and limiting the liability of the company, we must assume
the company to be cognizant of the fact that many per-
sons have applied for certificates in secret orders or so-
cieties such as are referred to in section 3505, where they
are excluded from the operation of laws regulating insur-
ance companies and fraternal beneficiary associations
writing life insurance as defined in said chapter 38, and
had the company desired this specific information, it
would have been an easy matter to frame a question free
from doubt or ambiguity; and, where an insurance com-
pany or association seeks to avoid a policy on the ground
of falsity in answers to a material question, the court will
construe the question and answer strictly against the com-
pany, and, if any construction can reasonably be put on

the question and answer such as will avoid a forfeiture of the policy on the ground of falsity in the answer, that construction will be adopted and the policy sustained. *Union Acc. Co. v. Willis,* 44 Okla. 578, 145 Pac. 812, 5 L. R. A. 1915D, 358; *Okla. Nat'l Life Ins. Co. v. Norton,* 44 Okla. 783, 145 Pac. 1138, L. R. A. 1915E, 695; *Capital Fire Ins. Co. v. Carrol,* 26 Okla. 286, 109 Pac. 535; *Newton v. Southwestern Mut. Life Ass'n,* 116 Iowa, 311, 90 N. W. 73; *Fidelity Mut. Life Ass'n v. Miller,* 92 Fed. 63, 34 C. C. A. 211; *Penn Mut. Life Ins. Co. v. Bank,* 72 Fed. 413, 19 C. C. A. 286, 38 L. R. A. 33, 70; 3 Cooley's Briefs, Ins. 2079.

In fact, it has been said by some courts that such fraternal societies and mutual benefit associations are not engaged in the business of "insurance," as that term is generally accepted. *Comm. v. Eq. Ben. Ass'n,* 137 Pa. 412, 18 Atl. 1112; *Peterson v. Manhattan Life Ins. Co.,* 244 Ill. 337, 91 N. E. 466, 18 Ann. Cas. 96. And doubt has often arisen as to whether the contracts and certificates they issue may properly be described as life insurance. *Continental Life Ins. Co. v. Chamberlain,* 132 U. S. 304, 10 Sup. Ct. 87, 33 L. Ed. 341; *Penn Mut. Life Ins. Co. v. Merchants' Sav. Bank & Trust Co., supra.* However that may be, the Knights of Pythias being excepted from the operation of the statutes of this state, we may be justified in assuming that deceased had this fact in mind when he answered the question; and, this being true, it cannot be said that he willfully made a false answer thereto.

In *Fidelity Mut. Life Ass'n v. Miller,* 92 Fed. 63, 34 C. C. A. 211, the statement in the application was as follows:

"That I have never made application for insurance on my life to any company, association or society." "Give

name of each company, date of application, kind of policy, and amount applied for."

Construing these questions, the Circuit Court of Appeals for the Fourth Circuit said:

"This last inquiry, read in connection with the first, shows clearly that it was a policy in some 'company' about which information was sought, and that in the first inquiry the words, 'company, association, or society,' all referred to one and the same thing, viz., to an insurance company; and, besides, while, in their broader sense and acceptation, the words, 'company, association, or society' may cover a beneficial order, it will not be maintained that in ordinary life insurance parlance they mean any such thing. An 'insurance company,' an 'insurance association,' or 'insurance society,' all mean one and the same thing; and that is, regular insurance. Hence, in the second inquiry, the name of each 'company' alone was requested. The plaintiff in error itself is an insurance association, as distinguished from a company, and there are companies, and societies in abundance; for instance, 'The Equitable Life Assurance Society,' 'The New York Life Insurance Company,' etc., all meaning the same thing. We do not feel that there can be any serious doubt as to the correctness of this conclusion; particularly when, as we have shown, questions of doubt and ambiguity as to the meaning of the policy should be resolved against the company issuing the same."

There is not in the record before us a copy of the form of certificate issued by the Knights of Pythias, but it does appear that the Knights of Pythias is a fraternal order with an insurance department known as the "Endowment Rank," which issues certificates to its members only, and that the order is expressly excluded from the statutory definition of the words, "insurance company, association or society," and "fraternal beneficiary associations," in this state, and expressly exempted from the

operation of the insurance laws as applicable to the business of life insurance, intended to be regulated.

In *White v. National Life Ins. Co.,* 11 Ohio Dec. (Reprint) 857, the court held that, in an action by the beneficiary upon a policy of life insurance, the defense of breach of warranty of the truth of the statements of the assured in his application that no company or association had ever declined to grant a policy on his life is not made out by proof that a mutual benefit association, organized under section 3630, Rev. Stat. of that state, had previously thereto declined to issue a certificate of membership to the assured. Other decisions based upon statutes making a distinction between companies, associations, and societies engaged in the insurance business for gain and profit and fraternal beneficiary associations and mutual aid societies are as follows: *Lyons v. United Moderns,* 148 Cal. 470, 83 Pac. 804, 4 L. R. A. (N. S.) 247, 113 Am. St. Rep. 291, 7 Ann. Cas. 672; *Marshall v. A. O. U. W.,* 133 Cal. 686, 66 Pac. 25; *Newton v. Southwestern Mut. Life Ass'n,* 116 Iowa, 311, 90 N. W. 73; *Penn Mut. Life Ins. Co. v. Bank & T. Co.,* 72 Fed. 413, 19 C. C. A. 286, 38 L. R. A. 33, 70; *Comm. v. Ben. Ass'n,* 137 Pa. 412, 18 Atl. 1112; *Dickinson v. A. O. U. W.,* 159 Pa. 258, 28 Atl. 293; *Comm. v. Eq. Ass'n,* 137 Pa. 412, 18 Atl. 1112; *Eq. Life Ass'n Soc. v. Hazelwood,* 75 Tex. 338, 12 S. W. 621, 7 L. R. A. 217, 16 Am. St. Rep. 893.

Keeping in mind the distinction which is clearly made by the statutes of this state, and remembering that the question as to whether any company or association had ever declined or postponed the application of deceased for insurance was followed by the further questions, "When," and "What company," we are of the opinion that, reading

the questions together, it was a policy in some company or association engaged in the business of writing life insurance, as these terms are defined in the statute, about which information was sought, and that the interrogatory was not sufficiently broad, in view of our statute, to embrace within its import a certificate in the Knights of Pythias, which order is by statute expressly excluded from the meaning of the terms "insurance company, association or society," or "fraternal beneficiary association," as defined and regulated by law, and the answers made to the questions in the application were not false.

The policy in suit contains this provision:

"All statements of the insured in the said application shall, in the absence of fraud, be deemed representations and not warranties."

The case was tried to the court without a jury, who heard all the evidence and passed upon all questions of fact therein involved, in rendering his decision. The court made no special findings of fact; therefore a general finding in favor of plaintiff would include every fact necessary to support the judgment. *Bohart v. Mathews,* 29 Okla. 315, 116 Pac. 944; *Miller v. Severs,* 42 Okla. 378, 141 Pac. 965.

The question as to whether the answers given were false, and of the intent of the applicant in making them, is a question of fact for the jury, or for the court sitting as a jury. *Continental Casualty Co. v. Owen,* 38 Okla. 107, 131 Pac. 1084.

In discussing this question, this court, in *Owen v. United States Surety Co.,* 38 Okla. 123, 131 Pac. 1091, quoted at length from the case of *Penn Mut. Life Ins. Co. v. Bank & T. Co., supra,* as follows:

"Discussing a similar proposition in *Penn Mutual Life Ins. Co. v. Mechanics' Savings Bank & Trust Co.*, 72 Fed. 413, 19 C. C. A. 286, 38 L. R. A. 33, 70, Judge Taft says: 'It is urged for the defendant, however, that Schardt made an untrue answer concerning his other insurance, the presumption was that his failure to mention it was intentional, and that the court should have so instructed the jury. * * * But we do not think that the defendant was entitled to the instruction that the admission that Schardt had a policy in the New York Life Insurance Company, and failed to mention it, raised the presumption that his omission was intentional, or, what is the same thing, that it was fraudulent. There is a natural, and perhaps legal, presumption of the continuance of a state of knowledge as of the state of sanity or marriage, and, it being admitted Schardt once knew that he had taken this policy for $5,000 that he continued to know, and so remembered, that he had the policy when he answered the question as to other insurance. But the presumption is not conclusive. Men do forget entirely a fact previously known to them, and they do forget it temporarily, so that they may make an untrue statement inadvertently about it, though recently known to them. The possibility or probability of their doing so depends on the character of the fact in question, and all the circumstances under which the misstatement concerning it is made. There is also a presumption that a man does not make a fraudulent misstatement, but men frequently do, nevertheless, make such statements; and the question whether the presumption is overcome depends on the essential weight to be given to all the circumstances, including possible motive, together with the positive evidence of witnesses. The two presumptions in this case covered the same ground and were conflicting. Neither was conclusive, and it was for the jury to determine from all the circumstances what the truth was.' "

Had the previous application to the Knights of Pythias and its action thereon been embraced within the

question asked, it was still a question of fact as to whether the applicant had willfully withheld this information, or whether his omission so to do was unintentional, and the court, having found in favor of plaintiff, thereby determined this issue in plaintiff's favor.

The judgment is therefore affirmed.

All the Justices concur.