### MUTUAL LIFE INS. CO. v. BOUCHER, et al.

No. 10240—Opinion Filed July 12, 1921.

Rehearing Denied Sept. 13, 1921.

(Syllabus.)

1. Insurance—Life or Accident Policy—Falsity of Statements in Application—Question for Jury.

Generally, the question of the falsity of the statements contained in a life or accident insurance policy, and the intent of the applicant in making them, are for the jury.

2. Same — Representations or Warranties—Effect of Statute.

Under section 3467, Rev. Laws 1910, statements made by the insured in his application must be construed as representations and not warranties, and this requirement of the statute cannot be evaded by endorsing such statements upon the policy, which also contains a provision to the effect that the policy is issued in consideration of such statements, each of which the insured by accepting the policy warrants to be full, complete, and true.

3. Trial—Effect of General Finding.

Where a case is tried to the court without a jury, and the court makes no special findings of fact, a general finding in favor of plaintiff includes a finding upon every fact necessary to support the judgment,

4. Insurance—Falsity of Statements in Application—Question for Jury or Court.

The question as to whether certain answers given to questions in an application for insurance are false, and as to the intent of the applicant in making them, is a question of fact for the jury, or for the court sitting as a jury.

5. Same—Action on Life Policy—Recovery—Affirmance.

Record examined, and ordered that the judgment of the trial court be affirmed.

Error from District Court, Creek County; Mark L. Bozarth, Judge.

Action by Clara Boucher and others against the Mutual Life Insurance Company on life insurance policy. Judgment for plaintiffs, and defendant brings error. Affirmed.

Stephen C. Treadwell and Locke & Locke, for plaintiff in error.

W. W. Pryor and C. B. Rockwood, for defendants in error.

JOHNSON, J. By their petition, filed November 18, 1914, the defendants in error, hereinafter called the plaintiffs, sought to recover from the plaintiff in error hereinafter called the defendant, upon a policy of insurance issued by the defendant upon the life of their father, Columbus J. Myers, in the sum of $3,500 under date of September 14, 1913, and payable to them as the originally designated beneficiaries thereof.

Upon the second trial of the cause, had October 22-25, 1917, they recovered a judgment for $4,541, April 1, 1918; the jury having been discharged and the cause summitted to the court by agreement and taken under advisement.

The petition was in the usual form, and alleged the issuance of the policy, and the death of the insured on December 14, 1912, while the policy was in force. A copy of the policy was attached to the petition as exhibit "A" thereof.

The defendant's amended answer, filed January 19, 1915, upon which the case was tried, tendered a return of the premium paid, and set up in defense to the action upon the policy certain statements made in the application therefor, and alleged to be untrue. A copy of the application for the insurance was attached to the answer as an exhibit. Paragraphs 5-12 of the answer, setting up said defense, read as follows:

"5. The defendant was induced to issue said policy by reason of an application partly written and partly printed, made therefor by the said Columbus J. Myers on behalf and by the authority of the plaintiffs, and said policy of insurance, and particularly said term of insurance endorsement, was issued by the defendants in pursuance of, upon the faith of, and in consideration of, said application, and of each and all of the agreements, conditions, statements, answers and representations therein contained.

"6. Said application is composed of two parts on the same sheet of paper, the first consisting of certain statements, and an-

swers and agreements made and subscribed by the said Columbus J. Myers, in the presence of the defendant's soliciting agent, and the second consisting of statements made and subscribed by the said Columbus J. Myers in the presence of the medical examiner of the defendant. A copy of said application is attached to this answer, and marked 'Exhibit A' and made a part thereof.

"7. At the commencement of the first part of said application are statements and agreements substantially as follows:

" 'This application is made to the Mutual Life Insurance Company of New York. All the following statements and answers, and all those that I make to the company's medical examiner, in continuation of this application are true, and are offered to the company as an inducement to issue the proposed policy,' etc.

"8. Among the statements contained in the first portion of said application and above the signature of the said Columbus J. Myers thereto, are the following:

" '(22) I have never made an application nor submitted to an examination for life insurance upon which a policy has not been issued on the plan and premium rate originally applied for except to the following companies or associations; none.

" '(23) No negotiations for other insurance are now pending, or contemplated, except; none.'

"9. Among the statements and answers to the medical examiner made by the said Columbus J. Myers and contained in the second part of said application, are the following:

" 'What illness, diseases or injuries have you had since childhood? (The examiner should satisfy himself that the applicant gives full and careful answers to this question.)

Name of Disease, etc.—Pneumonia, Typhoid.
Number of Attacks—Three, Two.
Date of each—25 years ago, 1887; 1876-1896.
Duration—About 10 days; 3 Weeks each.
Severity—Mild; Mild.
Results—Good; Good.
Date of Com. Rec'y.—25-30 yrs. ago.; In four wks. from date of attack.

" '(5) Have you stated in answer to question 4 all such diseases, illnesses or injuries? Yes.

" '(6) State every physician who has prescribed for you or whom you have consulted in the past five years. None.

Name of physician—None.
Address.
When consulted.
Nature of Complaint. Give full details above under Q. 4.

" '(7) (a) Are you now in good health? Yes.' (b) if not, what is the impairment? None.

" '(11) Have you any bodily deformity? No.

" '(12) (a) Do you use wine, spirits or malt liquors? No. (b) if so what kind have you used during the past year and how much in any one day at the most? None. (c) What has been your daily average in past year? None. (d) Have you been intoxicatel during the past five years? Yes, twice. (e) Have you ever taken treatment for alcoholic or drug habit? No. (f) If a total abstainer, how long have you been so? Several years ago.'

"Underneath said questions and answers and above the signature of the said Columbus J. Myers thereto, is his certificate and statement as follows:

" 'I hereby certify that my answers to the foregoing questions are correctly recorded by the medical examiner.'

"10. By means of said statements and answers the said Columbus J. Myers represented and warranted to the defendant that he never had made an application or submitted to an examination for life insurance upon which a policy had not been issued on the plan and premium rate originally applied for without any exception of company or association, and that no negotiations for other insurance were then pending or contemplated without exception, and that the only illnesses, diseases or injuries he had had since childhood were pneumonia and typhoid; that he had had three attacks of pneumonia from which recovery was complete from twenty-five to thirty years before the time of said application; that he had had two attacks of typhoid, one in 1876 and the other in 1896, lasting about three weeks each, and in which recovery was complete in each case in four weeks from date of attack; that no physician had prescribed for him or had been consulted by him the preceding years; that he was then in good health, and without impairment; that he had no bodily deformity; that he did not use wine, spirits or malt liquors; on the contrary that he used none of them; and that during the preceding year he had used no kind of them and in any one day at the most had used none of them; that his daily average in the preceding years in respect of them had been none; that he had been intoxicated twice only during the preceding five years; that he had never taken treatment for the alcoholic or drug habit; and that he became a total abstainer several years ago, and had been such for several years. He made each of said representations and warranties to the defendant for the purpose of inducing it to issue said policy of insurance, and offered each of the same to it as an inducement to issue the same. It believed said representations to be true, and it was induced thereby to issue said policy, and it issued the same in reliance thereon.

"11. Each of the statements and answers so made by the said Columbus J. Myers was untrue, and was known by him to be untrue, when made. In fact, before the said statements were originally made and before the contract sued upon was made, the said Columbus J. Myers had made application and had submitted to an examination for life insurance upon which a policy had not been issued to him on the plan and premium originally applied for, and in fact not been issued to him at all and negotiations for other insurance were then pending. He had had other illnesses and diseases than those mentioned, and had been prescribed for and had consulted physicians within the preceding five years. He was not then in good health and he was not free from bodily deformity. He was suffering from kidney, stomach and heart troubles which afflicted him with a roaring in the head, and he had suffered from the same prior to the time of said application. He had consulted physicians and been prescribed for by physicians for such troubles and for other troubles. He was not then and he had not been for several years a total abstainer. He used wines, spirits and malt liquors at the time of making said application and he had used them in the preceding year and theretofore. He had used them often to excess and had been intoxicated on more than two occasions during the five years preceding said application.

"All the statements mentioned in paragraphs 9 and 10 above were untrue in fact when originally made, and all of them were untrue in fact when the contract herein sued upon was made and became effective. The defendant was ignorant of said facts, and if it had known of any of the same, would have refused to issue the policy of insurance sued upon.

"12. Wherefore, the defendant is not liable to the plaintiff on account of said policy."

The plaintiff's reply was a general denial.

Counsel for defendant assign and argue in their brief the following specifications of error: (1) The finding and judgment of the court is not sustained by sufficient evidence and is contrary to law. (2) The finding and judgment of the court is contrary to the law. (3) The court erred in overruling the defendant's motion for a new trial based upon the errors above mentioned.

The trial court made no separate findings of fact, but found generally the issues in favor of the plaintiff and against the defendant. This finding was, in effect, a special finding of everything necessary to support the general finding in favor of the plaintiff. Bohart v. Mathews, 29 Okla. 315, 116 Pac. 944; Miller v. Severs, 42 Okla. 378, 141 Pac. 965; Shawnee Life Ins. Co. v. Watkins, 53

Okla. 188, 156 Pac. 181; Miller v. Thompson, 80 Okla. 70, 194 Pac. 103; Elwood Oil & Gas Co. v. Gano, 76 Okla. 287, 185 Pac. 443.

The defense against recovery on the policy involved in this case was that the insured made false representations to the company in his application for the policy issued, and seemingly the one principally relied upon by the defendant is that the insured made false representations as to whether or not he had consulted or been attended by a physician within five years next preceding the making of the application for insurance.

This case, as we have seen, was tried to the court. As to whether or not the defendant made false representations, was a question of fact to be determined from the evidence by the court. The only question presented as to whether or not the evidence reasonably tends to support the findings of the trial court, therefore, the question of whether or not the representations made in the application for the insurance policy, were material to the risk, is a question to be determined by the court. Continental Casualty Co. v. Owen, 38 Okla. 107, 131 Pac. 1084; Mutual Life Insurance Co. v. Morgan, 39 Okla. 205, 135 Pac. 279; Shawnee Life Insurance Co. v. Watkins, 53 Okla. 188, 156 Pac. 181; Eminent Household of Columbian Woodmen v. Frater, 24 Okla. 214, 103 Pac. 558.

The defendant called three physicians to testify upon the issue of false statements pleaded as a defense, to wit: Dr. J. T. Stone, Corona, New Mexico; Dr. E. W. King, Bristow, Okla., and Dr. Chas. T. Schrader, Bristow, Okla. Dr. Stone's testimony in substance was that he knew, Columbus J. Myers during the year 1909, and prescribed for him a few times; that he complained of his stomach hurting him and from the history of the case that he gave, the doctor pronounced it chronic gastritis; he prescribed for him off and on for a few months. Dr. Schrader testified that in about February or March, 1912, he prescribed for the insured for kidney trouble, that he came to consult him and he prescribed for him for the disease which he thought he had; that he had not prescribed for him before or after; he said Myers had inflammation of the bladder and that sometimes that can be serious or dangerous, but it did not seem to be in his case; he did not remember telling him anything as to the seriousness of his ailment.

Dr. King testified that during the first part of August, 1912, Columbus J. Myers consulted him; he told him that he was a little bilious and he wanted something to clear

up his liver; he did not tell Myers that there was anything seriously wrong with him nor did he tell any other man that there was anything seriously wrong with him—"So far as I know he never knew that there was anything seriously the matter with him."

One W. O. Baker testified for the defendant that he knew Myers in Oklahoma before he went to New Mexico; that he seemed to be in perfect health, and that "he was the heartiest man I ever saw eat; he was an unusually strong and healthy man and did as much work as any two men; he was a man who hardly stopped; he worked night and day; I never heard of his being sick, and never saw him drunk."

Abner Bruce, who was county clerk of Creek county for seven years, testified for the plaintiff that he had known Myers seven or eight years; he seemed to be in perfect health; "I saw him three times just before he left here and went back to West Virginia in 1912; just before election. At that time his appearance as to health was normal to me."

Cliff Boucher testified that he lived with Myers in New Mexico, and that his health was very good; "he was never under the care of a doctor that I know of; he was not confined to his bed by sickness there. I remember his having been doctored for ear trouble by Dr. King; it was the last part of September, as nearly as I can remember."

Clarence Myers, son of Columbus J. Myers, who went with his father to New Mexico, testified that they lived there about 18 months. "I lived with my father on the homestead all the time; his health was extra good there; he worked all the time and I never heard him complain any of his health; during the year 1911 he had a lease south of Bristow; my brother and I farmed the lease; my father also worked; his health was good; worked all the time; I never heard him complain of his health; I saw him often." In the spring of 1912 his father took his mother back to Virginia the latter part of June; his health was better when he came back than when he went; he gained a great deal in weight and did not complain of any ailment of any kind.

Dr. Reynolds, who made the examination for the company, testified:

"I gave Mr. Myers a thorough examination; the condition of his heart was normal; when I examined Myers he did not have any indication of anything wrong with his stomach; if in the summer of 1909 he had had acute gastritis or chronic gastritis, to the extent of impairing his health, I could have told it at the time of my examination. He had no indication of it. I found his kidneys all right, normal; at the time I examined him Myers did not have Meniere's disease. When I examined Myers in 1912 I did not discover any trace of chronic gastritis; I found no abnormal condition when I examined him."

We have examined the testimony carefully, and think that the same supports the judgment of the trial court; and it is well settled law in this jurisdiction that under the circumstances this court will not reverse the judgment of the trial court, the rule being that:

"When a jury is waived, and when a cause is tried to the court, and the finding of the court is general, such finding is a finding of every special thing necessary to be found to sustain the general finding, and such finding, when reasonably supported by the evidence in the case, is conclusive upon the Supreme Court upon all doubtful and uncertain questions of fact so found." Miller v. Thompson, 80 Okla. 70, 194 Pac. 103; Elwood Oil & Gas Co. v. Gano, 76 Okla. 287, 185 Pac. 443; Shawnee Life Insurance Co. v. Watkins, 53 Okla. 188, 156 Pac. 181; Continental Casualty Co. v. Owen, 38 Okla. 107, 131 Pac. 1084.

The judgment of the trial court is affirmed.

PITCHFORD, V. C. J., and KANE, MILLER, and KENNAMER, JJ., concur.