Jessie HARRELL, Appellee,

v.

OLD AMERICAN INSURANCE COMPANY, Appellant.

No. 72357.

Court of Appeals of Oklahoma, Division No. 2.

Sept. 17, 1991.

Certiorari Denied Jan. 15, 1992.

Richard D. Gibbon and Cindy Perigo McVey, Richard D. Gibbon & Associates, Tulsa, for appellee.

Claire V. Eagan, Barbara L. Woltz, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C. and Dennis King, Knowles, King and Smith, Tulsa, for appellant.

BRIGHTMIRE, Judge.

The holder of a hospital confinement policy brought this action to recover damages for the insurer's breach of the insurance contract and failure to deal in good faith with its insured.

Judgment was entered for the plaintiff on a jury verdict for both compensatory and punitive damages.

The insurer appeals. We affirm.

## I

In 1984, Jessie Harrell, the thirty-seven-year-old plaintiff, bought a hospitalization insurance policy from the defendant, Old American Insurance Company. The contract provided in part that should Harrell suffer a covered loss (hospital confinement), Old American would pay her $30 per day while she was in the hospital. In December 1984, the policy lapsed for nonpayment of the monthly premium, but was soon reinstated effective January 31, 1985.

On April 29, 1985, Harrell walked into the hospital and was admitted for the following elective surgical procedures: Revision of a 1979 gastric stapling operation, a right hernia repair, and a bunionectomy on both of her feet. A presurgical physical examination disclosed that Harrell's temperature, pulse, blood pressure, and respiration were normal. She was expected to be in the hospital for only five to seven days.

The next day Harrell was taken to surgery where the contemplated procedures

were carried out. The operative reports state that the "patient tolerated this procedure well.... and [she was] removed to the Recovery Room in a good condition."

At first, Harrell's convalescence was satisfactory. On the second postoperative day, however, she began "spiking"[1] a temperature accompanied by a rapid pulse and respiration rate. Her condition did not immediately improve.

Testing eliminated a suspected pulmonary embolus (arterial obstruction) as the cause, but did disclose that she had an abnormal accumulation of fluid in the left chest cavity and a possible infection below her diaphragm. On May 4, 1985, exploratory surgery was carried out and a subphrenic (below the diaphragm) abscess was found and drained. Additional surgeries were necessary on May 21 and June 19, 1985, following which Harrell's condition began to slowly improve.

The acute postoperative onset of the infection-related sickness required Harrell to be confined in the hospital for some sixty days beyond the five or so days originally anticipated. So, Harrell, while still in the hospital, submitted a claim to Old American for benefits under her hospitalization policy.

Old American's claims examiner ordered a copy of Harrell's hospital records. Then without talking to either the treating physicians or Harrell, the claims examiner sent this inquiry to Old American's medical consultant:

"This insured was hospitalized 042985 to 070285. The policy lapsed 120384 and was reinstated 01–31–85. According to the medical records we have received what do you consider pre-existing and do you believe this entire confinement was medically necessary?"

The response by Dr. Alberg was crisp and laconic: "decline entire confinement as pre-existing."

Consequently, on July 23, 1985, the claims examiner wrote Harrell and informed her that the claim was denied because her "hospitalization was due to a pre-existing condition manifested, (prior to December 3, 1984)."

On August 20, 1985, Harrell again wrote the claims examiner saying that she was "just sick" about the denial of her claim and added that she could not "understand how your 'medical consultant' could come to such a conclusion." Harrell asked Old American to reconsider the claim and explained that she was "in desperate need of this money."

The response was a second rejection letter sent a week later repeating in substance what the examiner had said earlier. It is significant on the issue of bad faith that prior to mailing the letter the record does not disclose that the examiner asked either the company doctor about the medical significance of the sudden sickness that set in on the third postoperative day, or the company counsel about the relevant law, or Harrell about additional facts pertaining to her postoperative complications.

Finally, Harrell wrote Old American yet a third time pleading for a reconsideration of her claim by its "medical staff."

But it never happened. For after Dr. Alberg gave his initial opinion recommending the denial of the claim, Old American never submitted the claim for reconsideration by Alberg, by any other medical or legal expert, nor, as we said, did it ever attempt to communicate with any of Harrell's doctors.

Eventually Harrell sued Old American for: (1) Breach of contract, and (2) willful bad faith failure to deal with her.

The case was tried to a jury, which returned a verdict in favor of Harrell and awarded compensatory damages of $1,800 on her breach of contract claim, $40,000 on her bad faith claim, and $250,000 punitive damages.

From this judgment Old American appeals and advances the following assignments of error: (1) The trial court improp-

---

1. "Spiking" has been defined as "to alternate sharply high points and low points in temperature as shown on a fever chart." *Webster's* *Third New International Dictionary* 2194 (3d ed. 1986).

erly denied its motion for summary judgment; (2) the bad faith claim and punitive damages request should not have been submitted to the jury; (3) the evidence was insufficient to support actual damages for bad faith; (4) the punitive damages award was excessive; (5) the instructions given were contrary to law; and (6) the punitive damages award violates due process and constitutes an excessive fine.

## II

■ Old American's first complaint—that the trial court erred in denying its pretrial motion for summary judgment—is summarily rejected for the obvious reason that the propriety of the ruling became moot by virtue of the trial proceedings.[2]

## III

Old American's remaining assignments of error relate to Harrell's bad faith theory of recovery and the adjunctive punitive damages award. They may be summarized and reframed this way: There is no evidence to support a finding that Old American rejected Harrell's claim in bad faith, or if there is, then both the compensatory and punitive damages awards are excessive, and the punitive damages award is unconstitutional.

■ In the main the argument is that, although Harrell's hospital confinement should have lasted no more than seven days for the surgeries she had been admitted for, the postoperative problems she encountered were complications resulting from the operative procedures and therefore Old American could in good faith construe the policy provisions as excluding coverage for the extended hospitalization.

To begin with it is fundamental that when there is doubt about the meaning or interpretation of an insurance policy provision it will be construed in a light most favorable to the insured.[3]

Whatever doubts there might have been about the meaning of the material provisions of Old American's policy were correctly resolved by the trial court as a matter of law in instructions numbered 11 and 12. Instruction No. 11, to which Old American did not object to, informed the jury that:

"[T]he insurance contract provides in pertinent part as follows:

We will pay benefits for hospital confinement resulting from sickness or injury as described and defined herein.

'Sickness' means sickness or disease of a covered person *which first manifests itself after the effective date* and while *the policy is in force* except as provided in the reinstatement provision.

*'Pre-existing condition' means a condition* for which a covered person was treated or received medical advice or which was *manifested during the 12-month period immediately preceding* the *Effective Date.* A condition is manifested when it is active and where distinct symptoms are evident to a Covered Person and are of sufficient severity, in the opinion of a physician, to cause a person to seek medical diagnosis or treatment.

Reinstatement.

---

2. Old American did not object to the issues submitted for jury resolution by the trial court's introductory instruction. Moreover the evidence was that the trial court could without error have directed a verdict for Harrell on the liability issue and left it up to the jury to determine the amount of the award.

We note also that Old American's brief relies for support on depositions not designated as part of the appellate record. An appealing party has the responsibility to designate all material necessary to secure the corrective relief sought. *Hulsey v. Mid-America Preferred Life Ins. Co.,* 777 P.2d 932 (Okl.1989).

3. Said the court in *General Acc. Fire & Life Assur. Corp. v. Hymes,* 77 Okl. 20, 185 P. 1085 (1919):

"It has become settled law that where a stipulation or exception in a policy of insurance is capable of two meanings, or is ambiguous or uncertain, that meaning and interpretation is to be adopted which is the most favorable to the assured. *Shawnee Life Ins. Co. v. Watkins,* 53 Okl. 188, 156 Pac. 181 [1916]; *Friend v. Southern Ins. Co.,* 58 Okl. 448, 160 Pac. 457, L.R.A.1917B, 208 [1916]."

*The reinstated policy will cover* only loss (confinement) that results from an injury sustained after the reinstatement date or *sickness that starts more than 10 days after such date.* In all other respects your rights and ours will remain the same, subject to any provisions noted or attached to the reinstated policy." (Emphasis added.)

This was followed by Instruction No. 12, to which Old American did voice an objection but, as it turned out, Instruction No. 12 was one that Old American's own counsel had helped draft.[4] "I helped draw the instruction," said the defense counsel, "because I'm trying to aid the Court in coming up with a form that was workable."

"Just as long as the record shows that these are your words that you chose," said Harrell's counsel.

"The record also shows," Old American's counsel added, "that it's the lesser of the two evils."

"But you chose them," said Harrell's lawyer.

Instruction No. 12 reads:

"You are instructed that the Court has ruled that complications of surgery are not set forth in the policy as specific limitations or exclusions to coverage in the insurance contract; and the Court has ruled that the first 5 days of hospital confinement by the plaintiff are not to be considered by the jury, as they come within the conditions of the policy of Pre-existing conditions."

It is also a fact that the company physician—who is said to have advised Old American to deny Harrell's claim on the ground her extended stay was due to a "pre-existing condition"—admitted he did not mean that "the [spiked] temperature or the infection [was] pre-existing" but only the abnormalities which she entered the hospital to have surgically corrected. One can assume he communicated this important distinction to the claims examiner.

Beyond this the jury could reasonably find that the doctor was not particularly interested in a deeper probe into the operative facts. He did not, for instance, bother to inquire—after reading the record and discovering that the cause of Harrell's extended stay was not a consequence of the "pre-existing" gastric stapling, the right hernia, or the bunions—about the etiology of the postoperative infectious condition that overtook Harrell.

Indeed, the jury could find that the veteran claims examiner[5] deliberately ignored the relevant provisions of the policy requiring the company to pay benefits for hospital confinement resulting from "sickness or disease ... which first manifests itself after the Effective Date and while the policy is in force." The claims examiner also ignored the policy definition of the phrase "Pre-existing Condition" as set out above as well as the reinstatement clause. In this respect her letters to Harrell were misleading and therefore self-serving and unfair.

Finally, there is no evidence that the claims examiner sought legal advice regarding the coverage question. It is reasonable to infer that the reason she did not was either because she knew there was coverage or she did not want confirmation of what the court set out in Instruction No. 12. Tort liability may be imposed upon a clear showing that the insurer unreasonably and in bad faith, withheld payment of the claim of its insured. *Christian v. American Home Assur. Co.*, 577 P.2d 899 (Okl.1977).

█ It can be seen, therefore, that the evidence justified the trial court's conclusion that it clearly and convincingly demonstrated a course of conduct on the part of Old American employees and agents which manifested "a wanton or reckless disregard for the rights of [Harrell]." 23 O.S.Supp. 1990 § 9(A). Thus the trial court did not err in submitting the issue of punitive damages to the jury without any restriction on the amount it could award.

---

**4.** The basis for the objection was that "it goes to specific limitations or exclusions of the policy."

**5.** The evidence is that the examiner, Elaine Del Percio, was a woman who had been with Old American more than thirty years.

Nor was the award of punitive damages excessive in view of stipulated evidence that Old American at the time of trial had "Assets of $132,590,742; Liabilities of $100,170,560; Capital and Surplus of $32,420,182."

Likewise, the compensatory damages award of $40,000 for Old American's bad faith treatment of Harrell was founded on sufficient evidence that Harrell was subjected to mental anguish, distress, embarrassment, and harassment by creditors; and that she experienced anxiety and worry as a consequence of Old American's willful failure to deal with her fairly. Determining fair and adequate compensation for these detrimental elements was a duty imposed upon the jury by law as explained by the court's instructions. From the evidence we find no basis to conclude that the award is excessive.

We have reviewed the instructions and find that, as a whole, they fairly and sufficiently apprised the jury of the issues, the applicable law, and its duty in reaching a verdict. *Calhoun v. Fisher*, 202 Okl. 542, 215 P.2d 846 (1950). It appears that the jury correctly understood the instructions and returned a verdict it considered fair and reasonable. And Old American does not point to any evidence showing passion, prejudice or improper sympathy in arriving at the award. *See Wise v. Johnson Controls, Inc.*, 784 P.2d 86 (Okl.App.1989).

## IV

Finally, we hold that Old American's contention—that the punitive damages award violates its constitutional right to due process under the Fourteenth Amendment of the United States Constitution and Article II, Section 7 of the Oklahoma Constitution—is without merit.

The argument is that bad faith insurance claims should be judged by a clear-and-convincing-evidence standard rather than by a mere preponderance of the evidence.

The law, however, has been established otherwise in this state. The high court has expressly held that the burden of persuasion does not deviate in bad faith and fair dealings cases from the usual standard in civil cases, *i.e.*, a preponderance of the evidence. *Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907 (Okl.1982).

Nor is there merit in Old American's contention that it is entitled to have the jury reach a unanimous verdict under existing law. In civil cases, three-fourths of the jury concurring is sufficient to render a verdict. Okla. Const. art. 2, § 19.

Nor does the federal constitution require a unanimous verdict. Procedural due process only imposes constraints upon governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the due process clauses of the Fifth and Fourteenth Amendments. *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). The jury trial afforded Old American, though it did not feature a unanimous verdict or a bifurcation of the issues, did nevertheless satisfy substantive due process in that both parties were afforded a full opportunity to introduce their evidence, call and cross-examine witnesses, and present their arguments to the jury.

Finally, Old American asserts that the jury received no instructional guidance concerning the issue of punitive damages and that the trial court failed to conduct a post-verdict scrutiny of the reasonableness of the award sufficient to satisfy due process.

It points to the recent United States Supreme Court decision in *Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. ——, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), to support this constitutional challenge. We first note that the Supreme Court confined its review to the constitutional acceptability of the laws of Alabama to determine whether the due process clause was violated under the facts presented in that particular case. In *Pacific Mutual* the Supreme Court found that the jury instructions given "reasonably accommodated" the interests of both the defendant and the state. *Id.* 111 S.Ct. at 1044.

The Supreme Court found adequate jury instructions which included these elements: (1) Describe the purpose of punitive damages; (2) confine juror discretion to deterrence and retribution; (3) advise the jury that the imposition of punitive damages is

not compulsory; and (4) admonish the jury to consider the character and degree of the wrong and the necessity of preventing a similar wrong. *Id.* at 1044.[6]

Here the instructions given to the jury were substantially similar to those deemed adequate in *Pacific Mutual.* Instructions numbered 17 and 18 adequately address the issue of punitive damages, and properly advise the jury of the nature and limitations of its discretion in imposing such damages.

We also notice that Old American never sought to avail itself of post-verdict review of the amount or reasonableness of punitive damages through a motion for new trial, motion for judgment notwithstanding the verdict or application for remittitur. We find that the application of the law of this state in the court below "impose[d] a sufficiently definite and meaningful constraint on the discretion of [the jury] in awarding punitive damages." *Id.* at 1045.

Judgment affirmed.

RAPP, J., concurs.

STUBBLEFIELD, J., sitting by designation, concurs in result.

---

6. In accord with Alabama law, any evidence of Pacific Mutual's wealth was excluded from the trial. This is an element which certainly may be considered by the jury in assessing punitive damages under Oklahoma law. *Mitchell v. Ford Motor Credit Co.,* 688 P.2d 42 (Okl.1984).